STATE OF CONNECTICUT *v.* IRVING NIXON
(11201)

HEIMAN, FREEDMAN and SCHALLER, Js.

Argued May 5—decision released July 27, 1993

*Kathleen M. Paul,* certified legal intern, with whom were *Timothy H. Everett* and, on the brief, *Mark Sheehan* and *Rachel L. Todd,* legal interns, for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, was *Patricia Swords,* state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to assault an employee of the department of correction; General Statutes §§ 53a-48 and 53a-167c (a) (1);[1] assault of an employee of the department of correction; General Statutes §§ 53a-8 and 53a-167c (a) (1); second degree assault; General Statutes §§ 53a-8 and 53a-60 (a) (5);[2] and rioting at a correctional institution; General Statutes § 53a-179b.[3]

The defendant claims that the trial court (1) should have stricken the added counts charged by the state in the substitute information and granted the defendant a continuance, (2) arraigned the defendant in the presence of the jury in violation of his right under the fifth amendment to the United States constitution not to be compelled to testify against himself,[4] (3) allowed

[1] General Statutes § 53a-167c (a) (1) provides in pertinent part: "A person is guilty of assault of a . . . employee of the department of correction when, with intent to prevent a reasonably identifiable . . . employee of the department of correction from performing his duty, and while such . . . employee is acting in the performance of his duties, (1) he causes physical injury to such . . . employee . . . ."

[2] General Statutes § 53a-60 (a) provides in pertinent part: "A person is guilty of assault in the second degree when . . . (5) he is in the custody of the commissioner of correction, confined in any institution or facility of the department of correction . . . and with intent to cause physical injury to an employee of the department of correction . . . he causes physical injury to such employee or member."

[3] General Statutes § 53a-179b (a) provides: "A person is guilty of rioting at a correctional institution when he incites, instigates, organizes, connives at, causes, aids, abets, assists or takes part in any disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations of such institution."

[4] In addition, the defendant raises this claim under the state constitution. Because he does not offer a separate analysis of the state constitution, however, we will not review this aspect of the claim. *State* v. *Campbell,* 224 Conn. 168, 181 n.10, 12, 617 A.2d 889 (1992).

cross-examination that was irrelevant and beyond the scope of direct examination, (4) convicted and sentenced the defendant in violation of the double jeopardy clause of the fifth amendment to the United States constitution,[5] (5) improperly instructed the jury on issues of concurrency and unanimity, (6) should have set aside the conviction of rioting due to insufficient evidence, and (7) improperly instructed the jury on the charge of rioting. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant was incarcerated in the segregation unit of the Somers correctional institution. On the morning of January 11, 1991, correction employees Moses Williams, John Pearson, Stewart Felton and Michael Rutkowski were on duty when the defendant returned to his cell unit.

When he reentered the segregation unit, the defendant proceeded to cell number seventy-eight where another inmate, Francis Anderson, was incarcerated. Anderson was a particularly dangerous inmate. While correction employees were attempting to cuff Anderson's hands behind his back and shackle his feet, the defendant yelled "pop seventy-eight," a term used to request a correction employee to open a cell. In response, a prison employee mistakenly heeded the defendant's request. Anderson emerged from the cell unrestrained and proceeded toward a staircase. He ignored repeated orders to return to his cell.

Pearson sought to restrain the defendant, but the defendant was unwilling to cooperate and obey orders. Pearson was concerned that the defendant posed a

---

[5] In addition, the defendant raises this claim under the state constitution. Because he does not offer a separate analysis of the state constitution, however, we will not review this aspect of the claim. See footnote 4, supra.

greater threat than did Anderson. As the defendant began to walk away, he asked Anderson to assault a correction employee in exchange for $200 in cash.[6] Anderson agreed and punched Pearson in the jaw. Anderson tried to strike Pearson again while several other employees attempted to restrain him. In the course of the scuffle, Anderson threw Williams from his back and struck Rutkowski. As a result of Anderson's punch, Rutkowski sustained an injury to his forehead. Finally, with the help of the defendant, the officers regained control of Anderson and returned him to his cell.

After the jury returned a guilty verdict, the defendant filed a motion for judgment of acquittal. The court denied the motion,[7] and this appeal ensued.

I

The defendant claims that the trial court improperly refused to strike the state's substitute information or, alternatively, to grant the defendant a continuance. The defendant's argument is predicated on the assertion that by bringing additional charges immediately before jury selection, the state prejudiced the defendant's substantive rights. We disagree.

On May 7, 1991, the state charged the defendant with four criminal offenses: two counts of conspiracy to assault a correction employee and two counts of conspiracy to commit second degree assault. On October 28, 1991, the day before jury selection,[8] the state

---

[6] According to the testimony of Williams, the defendant told Anderson, "I'll give you $200 if you trash this white boy." Felton testified that the defendant told Anderson, "I'll give you $200 to hit that CO Pearson, Rutkowski."

[7] The trial court set aside the verdict of guilty of conspiracy to commit second degree assault.

[8] The defendant represented that he did not receive the substitute information until the morning of October 29, 1991, just before the commence-

filed a substitute information that set forth three new charges: accessory to assault of a correction employee, accessory to second degree assault, and rioting.[9]

Before jury selection, the defendant objected to the additional charges and sought a continuance. While defense counsel stated to the court that the added counts would affect his questioning of potential jurors, he did not specify at any time how the new charges would affect the voir dire. The court overruled the defendant's objection and noted an exception to the ruling. The state called its first witness seven days later.

"[F]or purposes of Practice Book §§ 623 and 624, a criminal trial begins with the voir dire of the prospective jurors." *State* v. *Cole,* 8 Conn. App. 545, 551–52, 513 A.2d 752 (1986). Before the commencement of a criminal trial, § 623 controls the alteration of charges brought against a criminal defendant. This section provides that "[i]f the trial has not commenced, the prosecuting authority may amend the information, or add additional counts, or file a substitute information. Upon motion of the defendant, the judicial authority, *in [its] discretion,* may strike the amendment or added counts or substitute information, if the trial or the cause would be unduly delayed or the substantive rights of the defendant would be prejudiced." (Emphasis added.) Practice Book § 623.

In this case, it is undisputed that the substitute information was filed prior to the commencement of the voir dire. Consequently, § 623 governed the trial court's

ment of jury selection. With respect to the rioting count, the state represented to the court, "I notified [the defendant] prior to even the start of this trial that we were going to proceed on the rioting count."

[9] The substitute information included only two of the four original conspiracy counts. The net effect of the change was to bring five instead of four counts against the defendant. In terms of the sentences accompanying the new charges, however, the state increased the defendant's exposure by thirty-five years.

analysis. *State* v. *Cole,* supra. The critical question therefore is whether the substitute information prejudiced the defendant's rights to the extent that the trial court abused its discretion when it chose not to strike the added counts or to grant the defendant a continuance.

In *State* v. *Huff,* 10 Conn. App. 330, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987), this court considered a similar issue in a virtually identical context. In *Huff,* the state originally charged the defendant with robbery in the first degree. Id., 344. Immediately prior to the voir dire, however, the state filed a substitute information and added the charge of assault in the second degree. The defendant moved to strike the added count or, alternatively, for a one week continuance. The trial court denied both motions, and the presentation of evidence began two days later. Id., 346–47.

The issue before this court in *Huff* was whether the added charge prejudiced the defendant's substantive rights. Id., 345. We held that it did not, reasoning that (1) the additional count involved the same "factual matrix" as the first count, (2) the defendant was able to prepare sufficiently for the trial on the basis of his access to police reports in the state's attorney's file, and (3) the defendant did not dispute the commission of the crime, but rather claimed that he was not involved. Id., 346.

In the present case, the trial court's ruling is fully consistent with our decision in *State* v. *Huff,* supra, 344–47. Clearly, the added counts of accessorial liability and rioting arose out of the same factual matrix as the initial charges. Further, because the defendant at all times knew of the alleged facts underlying the added crimes and because he had notice of the added charges a full week prior to the commencement of the state's

case, we are convinced that the defendant had ample opportunity to prepare for trial. Moreover, the defendant never claimed that Anderson did not commit the assault of the correction employee.[10] Instead, he claimed that he was not involved with the commission of the crime. We conclude that the sound reasoning of *State* v. *Huff,* supra, is equally applicable to the present case.

The defendant argues that the trial court's decision impeded his ability to conduct a meaningful voir dire, especially since the new counts subjected him to significantly greater sentencing exposure. We reject this contention for several reasons. First, the defendant never explained to the trial court how the added counts would alter his questioning of the potential jurors. We noted in *State* v. *Waterman,* 7 Conn. App. 326, 334–35, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986), that the defendant must make a specific showing of prejudice to establish a violation of due process. Here, the defendant's bare assertion of prejudice was not enough to establish a violation of due process.

Second, while it is true that the state did not officially apprise the defendant of the added charges until shortly before voir dire, the defendant had an opportunity to question the potential jurors on matters pertaining to the added charges during the voir dire. Additionally, we are aware that the state has broad authority to amend its charge prior to voir dire. *State* v. *Cole,* supra, 550. Indeed, § 623 of our rules of practice offers the state a vehicle through which to expose a defendant to greater criminal liability, provided that the state does not prejudice the defendant's substantive rights.

---

[10] The defendant never contested the fact that Anderson hit two correction officers. Defense counsel stated in closing argument that "there's really no question, there's really not an issue as to whether Mr. Anderson hit Officer Pearson and there's no question that he hit Rutkowski."

We conclude that, in light of *State* v. *Huff,* supra, the added criminal charges did not prejudice the defendant's substantive rights. The trial court acted within its discretion, and we will not substitute our judgment for that of the trial court. See *Fisher* v. *Fisher,* 28 Conn. App. 483, 487, 611 A.2d 440 (1992).

## II

The defendant claims that his arraignment in the presence of the jury violated his constitutional right not to be compelled to testify against himself. We disagree.

On November 5, 1992, the trial court arraigned the defendant on the substitute information. First, the trial court swore in the jury. Then, the court clerk read each of the five counts of the substitute information. In the presence of the jury, the defendant indicated that he was pleading not guilty as to each count. The defendant now claims that this procedure violated his fifth amendment right not to be compelled to testify against himself.

As a threshold matter, we note that the defendant never raised this claim with the trial court. He now seeks to bypass this deficiency via the doctrine of *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). In order to prevail on a claim of constitutional error that has not been adequately preserved at trial, the defendant must meet all of the following conditions: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40; *State* v. *Plude,* 30 Conn. App. 527, 536–37, 621 A.2d 1342 (1993). "We

may, however, dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case." *State* v. *Plude,* supra, 537.

Notwithstanding the defendant's invocation of the fifth amendment, the defendant's claim does not implicate a clear constitutional right. The fifth amendment to the United States constitution provides that no person "shall be *compelled* in any criminal case to be a witness against himself . . . ." (Emphasis added.)[11]

In this case, the record is devoid of any indication that the defendant was compelled to enter a plea of not guilty in the presence of the jury. With the advice of counsel, the defendant could well have chosen not to answer the question or asked his attorney to enter the plea of not guilty on his behalf. Moreover, the defendant's plea of not guilty in this fashion may have served a tactical purpose in allowing the jury to observe him deny the commission of the crimes. While we do not approve of the plea process at issue in this case, we conclude that the defendant cannot prevail under *State* v. *Golding,* supra.

## III

The defendant next claims that the trial court improperly allowed cross-examination that was irrelevant and beyond the scope of direct examination. We disagree.

Robert Carra, an inmate account supervisor at the Somers correctional institution, testified as a witness for the defense. On direct examination, he explained that in 1991, the defendant had not transferred any funds to Anderson. Further, according to Carra, the defendant's account did not exceed $117.78 in that year. Carra also testified that, within the correctional facility, cash is considered contraband and accordingly is subject to confiscation.

---

[11] We assume without deciding that the defendant's plea of not guilty before the jury was testimonial in nature.

On cross-examination, the state elicited testimony regarding other forms of contraband at the prison. For example, Carra testified that drugs, liquor and weapons are considered contraband and are present at the prison. The defendant objected to this line of inquiry as beyond the scope of direct examination and immaterial to the issues at trial. In response, the state argued that it was attempting to rebut the suggestion on direct examination that the defendant did not have the means to pay Anderson for the assault. The trial court overruled the objection.

We initially note that our review of a trial court's evidentiary ruling is limited. " 'Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice.' " *State* v. *Alvarez,* 216 Conn. 301, 306, 579 A.2d 515 (1990). In considering whether the trial court abused its discretion, "the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . ." *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 263, 413 A.2d 854 (1979).

It is well settled that the scope of cross-examination is limited to matters covered in the direct examination, except as they involve credibility. *State* v. *Ireland,* 218 Conn. 447, 590 A.2d 106 (1991). "The court has wide discretion to determine the scope of cross-examination." *State* v. *Hernandez,* 224 Conn. 196, 208, 618 A.2d 494 (1992). A question is within the scope of the direct examination if it is intended to "rebut, impeach, modify or explain any of the defendant's direct testimony . . . ." *State* v. *Zdanis,* 173 Conn. 189, 196, 377 A.2d 275 (1977). "Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later

questions the witness on the same subject." *State* v. *Graham,* 200 Conn. 9, 13, 509 A.2d 493 (1986); see also *State* v. *Hernandez,* supra, 206.

In the present case, the trial court reasonably concluded that the state's cross-examination of Carra was appropriate. Defense counsel elicited from Carra evidence that the defendant did not have sufficient funds in his account to pay Anderson for the assault. Carra's testimony further established that prison officials regarded cash in the possession of inmates as contraband. Through cross-examination, the state sought to rebut the effect of this evidence by eliciting evidence that inmates possessed other forms of contraband. This evidence was offered for the purpose of creating the inference that the defendant could have offered cash or other forms of contraband to Anderson in lieu of a payment from his account. We conclude that the trial court acted within its discretion in allowing the state to pursue this line of inquiry.

## IV

The defendant next claims that his punishment for assault of an employee of the department of correction and second degree assault violates the double jeopardy clause of the fifth amendment to the United States constitution. We disagree.

The defendant did not raise his claim of double jeopardy with the trial court, but seeks this court's review under the doctrine of *State* v. *Golding,* supra.[12] Our Supreme Court has held that double jeopardy claims arising in the course of a single trial and raised for the first time on appeal are reviewable. *State* v. *Chicano,* 216 Conn. 699, 705, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062

---

[12] See discussion in part I of this opinion regarding the analysis under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

(1991). Accordingly, we consider whether the convictions at issue are the same offense for double jeopardy purposes.

The double jeopardy clause of the fifth amendment provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." The fifth amendment thus prohibits multiple punishments for the same offense in the same trial. *State* v. *Anderson,* 212 Conn. 31, 34–35, 561 A.2d·897 (1989); *State* v. *Raymond,* 30 Conn. App. 606, 608–609, 621 A.2d 755 (1993); see also *Brown* v. *Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977).

When a defendant alleges multiple punishment for the same offense, he bears the burden of demonstrating (1) that the charges arise out of the same act or transaction and (2) that the crimes are the same offense. *State* v. *Palmer,* 206 Conn. 40, 52, 536 A.2d 936 (1988); *State* v. *Raymond,* supra, 609. The defendant must satisfy both of these conditions. Because there is no dispute in this case that the charges arose out of the same transaction, the sole issue is whether the crimes constitute the same offense. See *State* v. *Raymond,* supra.

Our courts have repeatedly invoked the test in *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), to decide whether two offenses constitute the same offense for double jeopardy purposes. *State* v. *Chicano,* supra, 706–707; *State* v. *Raymond,* supra; *State* v. *Nita,* 27 Conn. App. 103, 114–15, 604 A.2d 1322, cert. denied, 222 Conn. 903, 606 A.2d 1329 (1992). The inquiry under *Blockburger* involves a comparison of the elements of the two offenses. If the comparison reveals that each crime contains an element not found in the other, the defendant may be convicted of both crimes arising out of the same criminal incident. *State* v. *Greco,* 216 Conn. 282, 291,

579 A.2d 84 (1990); *State* v. *Vass,* 191 Conn. 604, 615, 469 A.2d 767 (1983); *State* v. *Nita,* supra, 115. "We determine whether each crime contains an element not found in the other by examining only the relevant statute, the information and the bill of particulars, and not the evidence presented at trial. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Nita,* supra.

In the present case, each of the crimes of assault of a department of correction employee and assault in the second degree contains an element that the other does not. A comparison of the intent elements of these crimes reveals a critical difference between the two statutes. An assault of an employee of the department of correction under § 53a-167c (a) (1) occurs when (1) a person intends to prevent a reasonably identifiable employee of the department of correction from performing his duty and (2) the person causes physical injury to a correction employee. *Intent to cause physical injury* is not a prerequisite to culpability under this statute. Thus, for example, if a person restrains a reasonably identifiable correction employee and intends to interfere with the performance of the employee's duty, any resulting injury to that employee, whether intentional or otherwise, would give rise to a violation of § 53a-167c (a) (1).

By contrast, assault in the second degree under § 53a-60 (a) (5) occurs when a person *"with intent to cause physical injury* to an employee of the department of correction . . . causes physical injury to such employee."* (Emphasis added.) Under this statute, if a person restrains a correction employee, any resulting injury to that employee will not give rise to criminal liability *unless* the person intended to cause injury.

In short, § 53a-167c (a) (1) requires intent to interfere with a correction employee, while § 53a-60a (5)

does not. At the same time, § 53a-60 (a) (5) requires intent to cause physical injury, an element not incorporated into § 53a-167c (a) (1). It is clear that each crime contains an element not found in the other. We therefore presume that the legislature intended the two crimes to warrant distinct punishments.

Relying by analogy on *State* v. *Flynn,* 14 Conn. App. 10, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988), the defendant argues that we cannot presume that the legislature intended to treat assault of a correction employee and assault in the second degree as separate offenses under the *Blockburger* test. In *Flynn,* we held that General Statutes §§ 53a-167a (a) and 53a-167c (a) (1) and (2) are the same offense for double jeopardy purposes. The court reasoned that "a person could not commit the greater offense of assault on a peace officer without having committed the lesser offense of interfering with a peace officer." Id., 19.

In this case, we are presented with an entirely different scenario. A person can commit assault of a correction employee, the greater offense, without committing assault in the second degree, the lesser offense. For example, a person is guilty under § 53a-167c (a) (1) if he intends to prevent a reasonably identifiable correction employee from performing his duty and, in doing so, causes injury to the employee. Under the same circumstances, however, the person may not be in violation of § 53a-60 (a) (5) *unless* he intended to cause the injury. We conclude that the defendant's reliance on *State* v. *Flynn,* supra, is misplaced.

"Our analysis does not end here, however. The *Blockburger* test is a rule of statutory construction and its application does not result in a conclusive presumption." *State* v. *Russell,* 25 Conn. App. 243, 251, 594 A.2d 1000, cert denied, 220 Conn. 911, 597 A.2d 338

(1991). *Clear* legislative intent may indicate that the two crimes are to be treated as one for double jeopardy purposes and thereby rebut the presumption under *Blockburger*. Id.

In this case, the intricate historical discussion offered by the defendant is ultimately inconclusive with regard to the intent of the legislature. The defendant relies on the following legislative history. Prior to 1971, General Statutes § 53-16a made it an offense to assault a correction employee. In 1971, the legislature enacted Public Acts 1971, No. 871, § 18, which was codified as General Statutes (Rev. to 1973) § 53a-60 and which superseded § 53-16a. In its original form, § 53a-60 set forth two provisions for penalizing acts by inmates that result in injuries to correction employees. First, under subdivision (3), a person was guilty of assault in the second degree when with the intent to prevent a peace officer from performing his duty, that person caused physical injury to the peace officer.[13] Second, under subdivision (6), a person committed second degree assault when he intentionally injured a correction employee.

In 1973, the legislature deleted subdivision (3) and incorporated its language into a new statute, General Statutes § 53a-167c (a) (1). See Public Acts 1973, No. 73-639, § 19. In doing so, the legislature upgraded the offense from a class D to a class C felony. The legislature, however, did not eliminate subdivision (6) of General Statutes (Rev. to 1973) § 53a-60. This subdivision instead became subdivision (5) when subdivision (3) was deleted.

In 1990, the legislature brought § 53a-167c to its current form. It added "employee of the department of correction" and subsection (b) to the statute. Subsection (b) requires, "[i]f any person who is confined in an

---

[13] When General Statutes § 53a-60 was originally enacted, "peace officer" was defined to include correction employee.

institution or facility of the department of correction is sentenced to a term of imprisonment for assault of an employee of the department of correction under this section, such term shall run consecutively to the term for which the person was serving at the time of the assault."

The defendant argues that in light of the history underlying §§ 53a-60 (a) (5) and 53a-167c (a) (1), the legislature clearly intended to upgrade *all* prisoner assaults on correction employees to class C felonies and to mandate consecutive sentences. Thus, the legislature intended to treat the two offenses as one for double jeopardy purposes. This argument is tantamount to claiming that the legislature's failure to delete § 53a-60 (a) (6) in 1973 was an oversight—a proposition that we find unpersuasive.

The legislature created § 53a-167c using language from the 1973 version of § 53a-60. The legislature enacted § 53a-167c (a) (1), knowing full well that § 53a-60 (6) would exist as a separate provision for assault of a correction employee. It is a basic tenet of statutory construction that the legislature acts with full knowledge of existing statutes and that it intends to create one body of law. *Kinney* v. *State,* 213 Conn. 54, 65, 566 A.2d 670 (1989); *Housing Authority* v. *Olesen,* 31 Conn. App. 359, 365, 624 A.2d 920 (1993). That rule is particularly applicable where, as here, one statute is derivative of another.

We conclude that the defendant's historical analysis has not established a clear legislative intent to treat §§ 53a-167c (a) (1) and 53a-60 (5) as one offense for double jeopardy purposes. Having failed to rebut the presumption under *Blockburger,* the defendant cannot prevail on his double jeopardy claim.

## V

The defendant next argues that the trial court, in its instructions to the jury, failed to explain the constitutional requirements of concurrency and unanimity. This claim is directed to the counts of assault of a correction employee and assault in the second degree.

## A

We first address the defendant's argument that the trial court was required to instruct the jury on concurrency. The issue is whether §§ 53a-60 (a) (5) and 53a-167c (a) (1) require the actual victim to be the object of the defendant's intent. The defendant never raised this claim with the trial court. Nevertheless, even when reviewed under the doctrine of *State* v. *Golding,* supra, the defendant's claim does not withstand analysis because it is clear that the argument rests on a faulty premise—a misinterpretation of these two statutes.

A defendant commits the offenses of assault of a correction employee and assault in the second degree when, with the intent to prevent an employee from performing his duties or with the intent to injure an employee, the defendant causes injury to *such employee.* General Statutes §§ 53a-167c (a) (1) and 53a-60 (a) (5). Relying on the legislature's use of "such," the defendant argues that these statutes impose criminal liability only if the victim is the *specific person* with whom the defendant intended to interfere or injure. We disagree.

The legislature's use of "such" in a given statute does not necessarily parallel the dictionary definition of this word; instead we construe the word "such" to effectuate the intent of the legislature. *Nichols* v. *Warren,* 209 Conn. 191, 197, 550 A.2d 309 (1988); *Verrastro* v. *Sivertsen,* 188 Conn. 213, 221 n.7, 448 A.2d 1344 (1982);

*Bahre* v. *Hogbloom,* 162 Conn. 549, 556, 295 A.2d 547 (1972). Here, it is obvious from the language of both statutes that the legislature has sought to circumscribe punishment for an inmate who inflicts harm on a correction employee when the inmate intended either to prevent a correction employee from performing his duty, § 53a-167c (a) (1), or to injure a correction employee, § 53a-60 (a) (5). Therefore, the legislature's use of "such" refers to the requirement that the victim be a correction employee, but not necessarily the specific employee to whom the defendant directed his intent.

Under the defendant's interpretation of §§ 53a-167c (a) (1) and 53a-60 (a) (5), an inmate who attempts to injure one correction employee but instead harms another employee has not violated either statute. This result would entirely undercut the clear intent of the legislature. Under the foregoing scenario, the inmate has performed an act that the legislature sought to proscribe through §§ 53a-167c (a) (1) and 53a-60 (a) (5), namely, the injury of a correction employee.

We hold that the use of "such" in § 53a-167c (a) (1) does not relieve a defendant of criminal liability if, with the intent to prevent a reasonably identifiable correction employee from performing his duty, the defendant causes physical injury to a correction employee. Similarly, under § 53a-60 (a) (5), a person is guilty of assault in the second degree if that person, with the intent to injure a correction employee, injures a correction employee. It follows that the trial court's failure to instruct the jury in accordance with the defendant's interpretation of these statutes was not improper. To hold otherwise would be to allow a defendant to escape liability because fortuitously he injured

one correction employee and not another, even though he possessed the requisite intent under each statute.[14]

## B

In a related claim, the defendant asserts that the trial court did not adequately instruct the jury on the requirement of unanimity. The defendant's claim is predicated on his concern that the jury may not have agreed on (1) which officer the defendant intended Anderson to assault and (2) whether the victim of the assault was the specific correction employee that the defendant intended Anderson to assault. According to the defendant, an adequate jury instruction explaining the requirements of unanimity would have alleviated this purported constitutional infirmity.

In instructing the jury, the trial court repeatedly explained that the jury's verdict had to be unanimous. For example, the court stated, "[Y]our verdict must be unanimous and you must all agree and you must be unanimous and that is the requirement of the law. . . . I now instruct you that your verdict must be unanimous." When the jury returned a verdict of guilty on all counts, the court clerk asked, "Ladies and gentleman, and each of you do say *unanimously* that the accused is guilty of the crime of assault on a corrections officer, second count; this is your verdict say you *all*?" (Emphasis added.) The jurors responded, "Yes." The jury responded similarly to the court clerk's question regarding the guilty verdict for assault in the second degree.

[14] We further note that our interpretation of General Statutes §§ 53a-167c (a) (1) and 53a-60 (a) (5) mirrors the doctrine of transferred intent, a doctrine applicable to both civil and criminal cases. *Altieri* v. *Colasso,* 168 Conn. 329, 334 n.4, 362 A.2d 798 (1975); see also General Statutes § 53a-4 (providing that criminal code does not displace other principles of criminal law not statutorily circumscribed).

We initially note that the defendant neither filed a request to charge nor objected to the court's instructions with respect to the issue of unanimity.[15] The defendant, however, asserts that his claim is reviewable under the doctrine of *State* v. *Golding*, supra,[16] because it calls into question the fairness of the trial.

In recent years, our Supreme Court has delineated a test for determining the necessity of a unanimity charge. *State* v. *Reddick*, 224 Conn. 445, 453–54, 619 A.2d 453 (1993); *State* v. *Famiglietti*, 219 Conn. 605, 619–20, 595 A.2d 306 (1991); *State* v. *Anderson*, 211 Conn. 18, 35, 557 A.2d 917 (1989). "We first review the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. *If such an instruction has not been given, that ends the matter*. Even if the instructions at trial can be read to have sanctioned such a nonunanimous verdict, however, we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged." (Emphasis added.) *State* v. *Famiglietti*, supra.

In the present case, the jury instructions are devoid of any indication that the trial court expressly sanctioned a nonunanimous verdict—quite the contrary. The jury charge is replete with statements underscoring the

[15] After the trial court's initial charge to the jury, the defendant requested the trial court to emphasize that the verdict be unanimous. The trial court had in fact instructed on unanimity generally, but neither the trial court nor the parties could recall the court's doing so. The defendant never mentioned the claims that it now asserts, namely, that the trial court must specifically instruct on unanimity to ensure concurrency. The trial court, therefore, called the jury back to the courtroom and instructed it to return a unanimous verdict. It is clear, that the defendant has not preserved the claims he now raises.

[16] See discussion in part I of this opinion regarding the analysis under *Golding*.

requirement that the jury return a unanimous verdict. While the trial court never specifically required the jurors to agree on whom the defendant intended Anderson to assault or whether the victims were the objects of the defendant's intent, we cannot interpret the court's silence as sanctioning a nonunanimous verdict.

Having determined that the court never expressly sanctioned a nonunanimous verdict, our analysis of the defendant's claim does not proceed further. "[T]he court must inquire into the conceptual distinction between the alternative acts charged, and whether the state had presented evidence to support each alternative act, *only if* the trial court *expressly* sanctioned a nonunanimous verdict." (Emphasis in original.) *State* v. *Reddick,* supra, 454, citing, *State* v. *Anderson,* supra. We conclude that the trial court's instructions were not fundamentally unfair to the defendant and that the defendant accordingly cannot prevail under the bypass of *State* v. *Golding,* supra.

## VI

The defendant also claims that the evidence is insufficient to sustain the judgment of conviction of rioting at a correctional institution. The thrust of the defendant's position is that because only two persons were involved in the assault of the correction employees, the defendant could not be convicted under General Statutes § 53a-179b. We disagree.

Having failed to raise this claim with the trial court, the defendant seeks appellate review under *State* v. *Golding,* supra.[17] It is axiomatic that "[w]hen the record substantiates the fact that the state has not proved every element of the crime with which the defendant

---

[17] See discussion in part I of this opinion regarding the analysis under *Golding.*

has been charged, *Evans[-Golding]* review is warranted." *State* v. *Aleksiewicz,* 20 Conn. App. 643, 645 n.1, 569 A.2d 567 (1990). We thus consider whether the state has proved beyond a reasonable doubt that the defendant violated § 53a-179b.

Pursuant to § 53a-179b, a "person is guilty of rioting at a correctional institution when he incites, instigates, organizes, connives at, causes, aids, abets, assists or takes part in any disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations of such institution." "In order for a defendant to be found guilty of rioting at a correctional institution, he must plan or lead, or take part in the disturbance at the correctional institution." *State* v. *Rivera,* 30 Conn. App. 224, 232, 619 A.2d 1146 (1993).

In this case, the defendant seeks to engraft upon the statute the common law definition of rioting. Relying on 2 Z. Swift, A System of the Laws of the State of Connecticut (1796), pp. 339–40, the defendant argues that our modern rioting statute should be construed as requiring a minimum of three participants. By its express terms, however, our statute is *not* limited to the defendant's proposed construction. Instead, § 53a-179b subjects to criminal punishment a person who plans or leads a disturbance, disorder or riot at a correctional facility, irrespective of the number of participants.

In developing Connecticut's criminal code, the legislature has promulgated provisions with numerical prerequisites to liability. See, e.g., General Statutes § 53a-175 (first degree riot); General Statutes § 53a-176 (second degree riot); General Statutes § 53a-177 (unlawful assembly). Section 53a-179b, however, does not include a requirement of this kind. As previously stated, the legislature is presumed to act with knowledge of other statutory provisions, particularly those related

to the statute in question. *Kinney* v. *State,* supra; *Housing Authority* v. *Olesen,* supra. The absence of a numerical requirement in § 53a-179b thus reveals the legislature's intent not to restrict the offense of rioting at a correctional institution by specifying a particular number of participants. We conclude that the record substantiates the judgment of conviction under § 53a-179b, despite the state's failure to offer evidence indicating a third participant in the offense.

The defendant also claims that "organized disobedience with the rules and regulations of [the] correctional institution" is an element of the offense under § 53a-179b. According to the defendant, the state failed to offer evidence establishing this purported element of the crime, thereby failing to prove a violation of the statute. This argument assumes that the phrase "other organized disobedience to the rules and regulations of [the correctional] institution" modifies "disorder," "disturbance," "strike" and "riot." The language of the statute, however, does not support the defendant's interpretation.

A person is guilty of rioting at a correctional institution if he or she leads, plans or participates in a "disorder, disturbance, strike, riot *or* other organized disobedience to the rules and regulations of such institution." (Emphasis added.) General Statutes § 53a-179b. Phrased in the disjunctive, the statute proscribes *alternatively* organized disobedience to the rules of the correctional institution. The statute does *not* require disobedience of the rules as an element of the offense in all instances. We therefore conclude that the defendant cannot prevail under *Golding* because the record substantiates the fact that the state has proved every element of § 53a-179b.

## VII

The defendant's final claim is that the trial court improperly instructed the jury on the offense of riot-

ing at a correctional institution. In challenging the trial court's instructions, the defendant points to the court's failure to explain adequately (1) the definition of disorder and disturbance and (2) the meaning of specific intent. The defendant's arguments in this regard are not persuasive.

The defendant again seeks review under *State* v. *Golding,* supra, claiming that the failure to charge on an essential element of a crime is a constitutional defect.[18] See *State* v. *Tweedy,* 219 Conn. 489, 510–11, 594 A.2d 906 (1991); *State* v. *Hamilton,* 30 Conn. App. 68, 74, 618 A.2d 1372, cert. granted, 225 Conn. 910, 621 A.2d 290 (1993). In deciding if the defendant can prevail under *Golding,* "the test is whether it is reasonably possible that the jury was misled." *State* v. *Quintana,* 209 Conn. 34, 50, 547 A.2d 534 (1988). "We do not evaluate a contested portion of an instruction in artificial isolation from the overall charge. [*State* v. *Quintana,* supra]. Instead, we examine the charge in its entirety. *State* v. *Hopkins,* 222 Conn. 117, 130, 609 A.2d 236 (1992); *State* v. *Grullon,* 212 Conn. 195, 204, 562 A.2d 481 (1989)." *State* v. *Channer,* 28 Conn. App. 161, 171–72, 612 A.2d 95, cert. denied, 223 Conn. 921, 614 A.2d 826 (1992).

The defendant's claim of instructional error with respect to the definition of disorder or disturbance is predicated on the same argument that we rejected in part VI of this opinion, namely, that rioting under § 53a-179b requires a minimum of three participants. For the reasons stated in part VI of this opinion, we conclude that it is not reasonably possible that the trial court's discussion of disorder and disturbance misled the jury.

---

[18] See discussion in part I of this opinion regarding the analysis under *Golding.*

We also reject the defendant's assertion that the trial court failed to instruct the jury adequately that specific intent to cause a disorder or disturbance is an essential element of § 53a-179b. In deciding whether a criminal statute requires general or specific intent, our Supreme Court regularly has invoked the following distinction. "When the elements of a crime consist of a description of a particular act and a mental element not specific in nature, the only issue is whether the defendant intended to do the proscribed act. If he did so intend, he has the requisite *general intent* for culpability. When the elements of a crime include a defendant's intent to achieve some result additional to the act, the additional language distinguishes the crime from those of general intent and makes it one requiring a *specific intent. State* v. *Shine,* 193 Conn. 632, 638, 479 A.2d 218 (1984), quoting *State* v. *Bitting,* 162 Conn. 1, 5, 291 A.2d 240 (1971); *State* v. *Pascucci,* 164 Conn. 69, 74, 316 A.2d 750 (1972); *State* v. *Husser,* 161 Conn. 513, 515, 290 A.2d 336 (1971); 21 Am. Jur. 2d, Criminal Law, §§ 89 through 91." (Emphasis added; internal quotation marks omitted.) *State* v. *McClary,* 207 Conn. 233, 240, 541 A.2d 96 (1988).

In *State* v. *Pascucci,* supra, our Supreme Court considered whether inciting to riot at a correctional institution is a specific intent crime. The statute at issue in *Pascucci,* General Statutes (Rev. to 1968) § 53-167a, punished "any person who incites, instigates, organizes, connives at, causes, aids, abets or takes part in any disorder, disturbance or other organized disobedience to the rules and regulations of the institution." This statute was the predecessor to General Statutes § 53a-179c (inciting to riot at a correctional institution) and contains essentially the same language as the rioting statute at issue in the present case.

The court in *Pascucci* rejected the defendant's claim that inciting to riot at a correctional institution is a spe-

cific intent crime. Id., 73–75. The court first noted that the statute made no reference to a specific intent requirement. Id., 73. From a policy standpoint, the court reasoned that "[t]he dangers which the statute seeks to obviate could arise from acts which, although in no way intended to produce danger, readily could give rise to disorder, disturbance, strike or riot . . . ." Id.

Applied to the present case, the decision in *Pascucci* militates against the defendant's claim of instructional error. The statute at issue in *Pascucci* is essentially the same as the statute now in question. The offense of rioting at a correctional institution does not expressly provide for any particular scienter requirement. Moreover, the same policy rationale articulated in *Pascucci* applies to § 53a-179b. In light of *Pascucci,* it is clear that rioting at a correctional institution is not a specific intent crime. We conclude that it was not reasonably possible that any failure by the trial court to explain the meaning of specific intent misled the jury. The defendant accordingly cannot prevail under *State* v. *Golding,* supra.

The judgment is affirmed.

In this opinion the other judges concurred.

