STATE OF CONNECTICUT *v.* MILTON E. IVES, SR.
(12620)

DUPONT, C. J., and HEIMAN and SPEAR, Js.

Argued November 1, 1994—decision released February 21, 1995

*Hubert J. Santos,* with whom, on the brief, was *Hope C. Seeley,* for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom, on the brief, were *Patricia Swords,* state's attorney, and *Nina Rosen,* assistant state's attorney, for the appellee (state).

SPEAR, J. The defendant appeals from a judgment of conviction of larceny in the first degree by receiving stolen property in violation of General Statutes §§ 53a-119 (8)[1] and 53a-122 (a) (2),[2] larceny in the first

---

[1] General Statutes § 53a-119 provides in pertinent part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . .

"(8) Receiving stolen property. A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen . . . ."

[2] General Statutes § 53a-122 (a) provides in pertinent part: "A person

degree as an accessory in violation of General Statutes §§ 53a-8[3] and 53a-122, and burglary in the third degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-103.[4] The defendant claims that the trial court improperly (1) denied his motion to suppress evidence, (2) limited his cross-examination of the complainant, (3) denied his motion for acquittal that was based on a double jeopardy claim, and (4) denied his motion for acquittal that was based on the theory that, as a matter of law, one cannot be an accessory to an accessory.

The jury reasonably could have found the following facts. The defendant, Milton Ives, owned and operated a used furniture and antique shop known as the Barn Sale. The defendant buys and sells and collects coins. In November, 1990, Daniel Whalen contacted the defendant and offered to sell him some items. The defendant met Whalen at Whalen's home and viewed the items that Whalen was interested in selling. Whalen also showed the defendant his coin collection, which included a Standing Liberty quarter collection. The defendant complimented Whalen on his collection and offered to buy a rare 1916 Standing Liberty quarter. During this meeting, the defendant saw Whalen retrieve the coins from a safe in his laundry room.

In December, 1990, the defendant asked Rodney Stevens if he knew anyone who would burglarize Whalen's home and steal the coins. The defendant offered

---

is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . . (2) the value of the property . . . exceeds ten thousand dollars . . . ."

[3] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[4] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

Stevens $5000 for Whalen's 1916 Standing Liberty quarter. Pursuant to this conversation, Stevens arranged for Ronald Foley and Angelo Piazza to steal the coins.[5] On January 3, 1991, Whalen reported to the state police that his coin collection had been stolen.

On January 15, 1991, Foley was arrested on other charges and informed the police of his and others' participation in the burglary. Stevens was arrested in March, 1991, for his part in the burglary. On June 12, 1991, the state police learned that the defendant had sent coins that matched the description of the stolen coins to the American numismatic association certification service (ANACS) for certification. On June 21, 1991, the police executed a search warrant at the Barn Sale. Whalen accompanied the police and identified nineteen coins as his. The defendant was subsequently arrested, tried and convicted.

## I

The defendant first claims that the trial court improperly denied his motion to suppress all evidence found from the search of the Barn Sale. He challenges the validity of the warrant on three grounds: (1) the warrant affidavit failed to establish probable cause; (2) the information set forth in the warrant affidavit was stale; and (3) the affiant recklessly or intentionally omitted facts that negated probable cause in violation of *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). We are not persuaded by the defendant's arguments.

## A

The defendant first asserts that the search warrant affidavit did not establish probable cause because it con-

---

[5] An initial attempt to rob Whalen's house proved futile as Foley and Piazza were unable to find the house. The defendant thereafter provided Stevens with a map showing the location of Whalen's house. Stevens gave this map to Foley and Piazza.

tained insufficient facts from which a reasonable inference could be drawn that the items to be seized would be found either at his residence or business. He claims that the search violated the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution,[6] and, therefore, the evidence obtained pursuant to the search of his business should have been suppressed by the trial court. We do not agree.

"Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . *and* (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched." (Emphasis in original; internal quotation marks omitted.) *State* v. *Vincent*, 229 Conn. 164, 171, 640 A.2d 94 (1994). The defendant claims that the warrant affidavit did not satisfy the second element needed to establish probable cause because the affidavit failed to establish that the items would be found at either the defendant's business or residence.

" 'The role of an appellate court reviewing the validity of a warrant is to determine whether the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed.' " *State* v. *Duntz*, 223 Conn. 207, 215, 613 A.2d 224 (1992). "In determining whether the warrant was based upon probable cause, we may consider only the information that was actually before the issuing judge at the time he or she signed the warrant, and the reasonable inferences to be drawn therefrom. . . . We view that information, however, in the light most favorable to the

---

[6] As the defendant has failed to provide us with a separate analysis of the state constitution, we will review the claim only under the federal constitution. *State* v. *Pinnock*, 220 Conn. 765, 776 n.3, 601 A.2d 521 (1992).

issuing judge's determination of probable cause, and [i]n a doubtful or marginal case . . . our constitutional preference for a judicial determination of probable cause leads us to afford deference to the magistrate's determination." (Citation omitted; internal quotation marks omitted.) Id., 216.

From the allegations set forth in the search warrant, the issuing magistrate reasonably could have concluded that there was probable cause that the stolen property would be found at either the defendant's residence or his place of business. On June 20, 1992, search and seizure warrants were issued to seize the contents of the stolen safe, including, but not limited to, numerous coins, a revolver, oriental rugs, and any records showing business transactions with Stevens. Paragraph six of the affidavit sets forth the facts showing that the defendant had knowledge of the coins and their location in the safe. It stated that the defendant visited Whalen's home a few weeks prior to the burglary, and at this time, the defendant saw the coins and where they were kept in the safe. Paragraph eleven of the affidavit stated that the defendant told Whalen that he did not own a 1918 over 17 Standing Liberty quarter and that his 1916 Standing Liberty quarter was of an inferior grade. From this information, coupled with the fact that the defendant is a coin collector and offered Whalen between $3000 and $5000 for the 1916 coin, the magistrate could reasonably have inferred that the defendant had a motive to acquire coins belonging to Whalen.

The affidavit contained further facts that supported an inference of probable cause. It stated that the defendant admitted knowing Stevens, and that Stevens had tried to sell coins consistent with Whalen's collection at about 2:30 p.m. on January 3, 1991, the day of the burglary. It also alleged that the defendant submitted coins to ANACS for appraisal on January 23,

February 1, and February 4, 1991. The dates, denominations and grades of these coins were identical to the coins that were stolen from Whalen.

It was reasonable for the issuing judge to infer that by June 20, 1991, when the affidavit was signed, the coins had been returned by ANACS to the defendant. As the defendant is an avid coin collector who expressed an interest in Whalen's coins because of their superior quality, it was a reasonable inference for the judge to conclude that the defendant would retain at least some of the coins at either his business or residence.

"The nexus between the items sought and the place to be searched may be inferred from the type of crime, the nature of the evidence, the extent of an opportunity for concealment and normal inferences as to where a criminal would likely hide the item. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Vincent*, 30 Conn. App. 249, 257, 620 A.2d 152 (1993), aff'd, 229 Conn. 164, 640 A.2d 94 (1994). It was reasonable for the magistrate to conclude that the coins would be stored either among the defendant's collections at his residence or among the items for sale at his business, and, accordingly, probable cause existed to search both places.

B

The defendant next claims that the warrant was invalid because the facts alleged in the affidavit were too remote in time from the actual search. He argues that the four month lapse between the burglary and the issuance of the search warrant caused the factual allegations to become stale, and, thus, there was no probable cause to believe that items listed in the affidavit would be found in his residence or business on June 21, 1991. We disagree.

Proof of existence of probable cause for issuance of a search warrant must include facts so closely related to the time of issuance of the warrant as to justify a finding of probable cause at that time. *Sgro* v. *United States*, 287 U.S. 206, 210, 53 S. Ct. 138, 77 L. Ed. 260 (1932); *State* v. *Vincent*, 229 Conn. 164, 174, 640 A.2d 94 (1994). In our determination of whether the four month passage of time precluded a finding of probable cause there is no formulaic rule to be applied, but rather the question of staleness must be determined on a case by case basis. *State* v. *Vincent*, supra, 174.

In this case, the police officers were given authority to search the defendant's business and residence for the items that were stolen from Whalen's safe, specifically, numerous valuable coins. They were also authorized to search for any canceled checks or records evidencing business transactions with Stevens. It was reasonable to believe that an avid coin collector who had previously expressed an interest in the coins would keep at least some of them for a period of time as part of his collection. Furthermore, because the coins were not inherently incriminating and were likely to remain on the defendant's premises, probable cause dissipated less rapidly than if they were consumable or inherently incriminating. *State* v. *Carbone*, 172 Conn. 242, 251, 374 A.2d 215, cert. denied, 431 U.S. 967, 97 S. Ct. 2925, 53 L. Ed. 2d 1063 (1977). It was reasonable for the issuing judge to have inferred that it was likely that the canceled checks and business records were on the premises.

Under these circumstances, we conclude that the four months between the facts alleged and the challenged search did not preclude a finding of probable cause.

## C

The defendant's final claim with regard to the search warrant is that even if probable cause existed, the war-

rant was nonetheless invalid because material information was omitted in violation of *Franks* v. *Delaware,* supra, 438 U.S. 154.[7]

In order to prevail on a *Franks* claim, the defendant must prove: (1) that a false statement or omission was intentionally or recklessly made in the affidavit; and (2) that the factual misstatement or omission is material to the finding of probable cause. *State* v. *Rodriguez,* 223 Conn. 127, 142–43, 613 A.2d 211 (1992); *State* v. *Copeland,* 22 Conn. App. 98, 100, 576 A.2d 567 (1990). The defendant claims that the following information was intentionally or recklessly omitted from the affidavit: (1) the defendant's residence had been searched by Detective Sergeant Frank Griffin, one of the affiants, on March 27, 1991, on a matter totally unrelated to the Whalen burglary, (2) during this search, the defendant gave the detective coins for Whalen to identify and (3) these coins were shown to Whalen, who failed to identify them as coins that were stolen from his house in January, 1991.

The fact that Whalen had failed to identify certain coins would not have precluded the issuing judge's determination that probable cause existed. The defendant was in possession of many coins other than those that he gave to the detective and was free to choose selectively the coins given to Whalen for review, and it would have been reasonable for the issuing judge to conclude that the defendant had chosen to retain possession of the stolen coins. After reviewing the omitted facts, we conclude that even if the challenged omissions had been included in the application there would have been probable cause to support the issuance of the search warrant. This conclusion eliminates

---

[7] Cases subsequent to *Franks* have extended the rule to include material omissions from an affidavit. See *State* v. *Weinberg,* 215 Conn. 231, 237, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990); *State* v. *Bergin,* 214 Conn. 657, 666, 574 A.2d 164 (1990).

the need to determine whether the omission was made either intentionally or recklessly. See *State* v. *Just*, 185 Conn. 339, 359–60, 441 A.2d 98 (1981). Accordingly, the defendant was not entitled to have the evidence suppressed on the basis of a *Franks* claim.

## II

The defendant's second claim is that his convictions of larceny in the first degree by receiving stolen property and larceny in the first degree as an accessory violated his state and federal constitutional rights against double jeopardy.[8] We find no such violation.

The double jeopardy clause protects a defendant from multiple punishments for the same offense. *State* v. *Lonergan*, 213 Conn. 74, 78–79, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990). To be entitled to this type of double jeopardy protection, the defendant must satisfy both prongs of a two prong test. "Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) *State* v. *DePastino*, 228 Conn. 552, 571–72, 638 A.2d 578 (1994); *State* v. *Snook*, 210 Conn. 244, 264, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989); *State* v. *Roy*, 34 Conn. App. 751, 768, 643 A.2d 289, cert. granted on other grounds, 231 Conn. 918, 648 A.2d 166 (1994).

Our first inquiry is to determine whether both offenses arose from the same transaction. In making that decision, we analyze the language of the informa-

---

[8] As the defendant has failed to provide us with a separate analysis of the state constitution, we will review the claim under only the federal constitution. See footnote 6.

tion. *State* v. *Roy,* supra, 34 Conn. App. 768; *State* v. *Nita,* 27 Conn. App. 103, 113, 604 A.2d 1322, cert. denied, 222 Conn. 903, 606 A.2d 1329 (1992). The first count of the amended information and bill of particulars charges the defendant with larceny in the first degree in violation of §§ 53a-122 and 53a-119 (8). The first count alleges that "sometime between January 3, 1991, and June 21, 1991, at the 'Barn Sale' located on Route 6 in Windham, Connecticut, the defendant Milton Ives, with intent to deprive Daniel Whalen of property, namely coins, wrongfully received, retained, and disposed of those coins knowing that they had probably been stolen." The third count of the amended information and bill of particulars further charges the defendant with being an accessory to larceny in the first degree in violation of §§ 53a-8 and 53a-122 in that "on or about January 3, 1991, the defendant, Milton Ives, solicited, requested, commanded, importuned, and intentionally aided Rodney Stevens in depriving Daniel Whalen of property . . . ." Given that the two offenses occurred on separate days and in different places, they were not part of the same transaction, but rather were two separate transactions.[9] Cf. *State* v. *Roy,* supra, 768 (holding that offenses arose out of same transaction because they were alleged to have occurred at same time and place). We conclude, on the basis of our review of the information, that the crimes charged did not arise out of the same act or transaction.

Even if we were to conclude that the charges arose out of the same transaction, the defendant's claim must fail because we are not persuaded that the two offenses constitute the same offense for double jeopardy purposes. Both our Supreme Court and this court have continually applied the test promulgated in *Blockburger*

[9] The coins were stolen on January 3, 1991. The receiving offense occurred between January 3 and June 27, 1991.

v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed.
306 (1932), to determine whether two offenses consti-
tute the same offense for double jeopardy purposes.
*State* v. *Nixon*, 32 Conn. App. 224, 236, 630 A.2d 74
(1993), aff'd, 231 Conn. 545, 651 A.2d 1264 (1995); *State*
v. *Chicano*, 216 Conn. 699, 705–707, 584 A.2d 425
(1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898,
115 L. Ed. 2d 1062 (1991); *State* v. *Nita*, supra, 27
Conn. App. 114–15. "It is fundamental constitutional
law that where the charges arise out of the same trans-
action, they are not the same offense for double jeop-
ardy purposes if each statute requires proof of a fact
that the other does not."[10] *State* v. *Fudge*, 20 Conn.
App. 665, 669, 569 A.2d 1145, cert. denied, 214 Conn.
807, 573 A.2d 321 (1990).

A comparison of the two offenses reveals that each
requires proof of an element that is different from the
elements of the other crime. The first count, which
alleges larceny by receiving stolen goods under
§§ 53a-119 (8) and 53a-122 (a) (2), required the state to
prove that the defendant (1) received, retained or
disposed of the coins (2) knowing that the coins were
stolen. In contrast, to prove larceny as an accessory
in violation of §§ 53a-8 and 53a-122 the state had the
burden of proving that the defendant (1) solicited,
requested, commanded, importuned or aided Stevens
(2) in wrongfully taking the coins from Whalen's resi-
dence.

In our determination of whether each crime contains
an element not found in the other, we examine the rele-

---

[10] "The *Blockburger* test is a rule of statutory construction and its appli-
cation does not result in a conclusive presumption. . . . Clear legislative
intent may indicate that the two crimes are to be treated as one for double
jeopardy purposes and thereby rebut the presumption under *Blockburger*."
(Citation omitted; internal quotation marks omitted.) *State* v. *Nixon*, supra,
32 Conn. App. 238–39. No such legislative intent has been shown here. See
*State* v. *Ford*, 33 Conn. App. 143, 148, 634 A.2d 1188 (1993).

vant statutes, information and the bill of particulars. *State* v. *Nixon,* supra, 32 Conn. App. 237. Except for the intent permanently to deprive Whalen of the coins, none of the elements of larceny as an accessory is an element of larceny by receipt of stolen goods. It is clear that each crime contains at least one element not found in the other. Therefore, they are not the same offense for double jeopardy purposes under *Blockburger. State* v. *Fernandez,* 27 Conn. App. 73, 95, 604 A.2d 1308, cert. denied, 222 Conn. 904, 606 A.2d 1330 (1992); *State* v. *Roy,* supra, 34 Conn. 771.

We also find the defendant's reliance on the common law rule against holding the defendant liable for both larceny and receipt of stolen goods unpersuasive in rebutting the presumption that the two crimes are separate under *Blockburger.* This common law rule is limited to the proposition that the person guilty of the actual theft cannot also be guilty of receiving the same goods. *State* v. *Palkimas,* 153 Conn. 555, 560, 219 A.2d 220 (1966). This rule is inapplicable here because there is no claim that the defendant actually stole the goods, but rather that he had someone else steal the goods. Because the defendant was not the actual thief, he can be convicted of larceny as an accessory and larceny by receipt of goods.

We conclude that the defendant's punishments for larceny in the first degree by receiving stolen goods and larceny in the first degree as an accessory did not violate the constitutional prohibition of multiple punishments for the same offense.

### III

The defendant claims that the trial court improperly restricted his cross-examination of Whalen and prevented him from presenting evidence of a judgment entered against Whalen in a dissolution action in violation of his rights under the fifth, sixth and fourteenth

amendments to the United States constitution, and article first, § 8, of the Connecticut constitution.[11] The defendant argues that these limitations prevented him from showing that Whalen had the motive to arrange for the theft of his own coins. We disagree.

The following additional facts are necessary for the resolution of this issue. At trial, the defendant claimed in his defense that Whalen had arranged the burglary to satisfy the preexisting judgment by framing the defendant and filing a civil suit against the defendant in which he sought damages significantly higher than the value of the coins.[12] To prove this theory, the defendant wanted to cross-examine Whalen concerning the terms of the dissolution judgment. The trial court refused to permit the defendant to pursue this line of questioning because it held that the evidence failed to show a direct connection between Whalen and the burglary. The trial court also refused to permit the defendant to offer evidence of Whalen's failure to comply with the financial obligations set forth in the dissolution judgment.

"A defendant may give evidence concerning a third party's involvement with the crime, as long as there is some evidence which directly connects the third party with the crime. . . . [I]t is within the sound discretion of the trial court to refuse to admit such evidence when it simply affords a possible ground of possible suspicion against another person." (Citation omitted; internal quotation marks omitted.) *State* v. *Ireland*, 218 Conn. 447, 451, 590 A.2d 106 (1991). "It is not enough [however] to show that another had the motive to commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the

[11] See footnote 8.

[12] Whalen has instituted a civil suit against the defendant seeking money damages. The judgment in Whalen's favor was affirmed on appeal to this court. *Whalen* v. *Ives,* 36 Conn. App. 7, 654 A.2d 798 (1995).

crime of which the defendant was accused." (Citations omitted; internal quotation marks omitted.) *State* v. *Sauris*, 227 Conn. 389, 401, 631 A.2d 238 (1993).

Because the admissibility of such evidence is governed by the rules of relevance, the proffered evidence taken alone or together must render the guilt of the third party more certain or probable. The evidence that the defendant sought to admit is too tenuous to be considered relevant. Although the fact that Whalen had an outstanding dissolution judgment may show Whalen's need for money, it fails to raise more than a mere suspicion. As the trial court noted, a civil lawsuit is a slow and uncertain method of raising funds. Furthermore, there is no connection between Stevens and Whalen. Stevens testified that he had lied to Foley by telling him that he had been to Whalen's house and seen the safe in order to ensure that Foley would take part in the burglary. Under these circumstances, the trial court did not abuse its discretion in concluding that the evidence of Whalen's dissolution judgment was not relevant.

## IV

The defendant's final claim is that the trial court improperly denied his motions for judgment of acquittal because there was insufficient evidence to support the jury's conviction of larceny in the first degree as an accessory and burglary in the third degree as an accessory. Under § 53a-8, a person may be convicted as an accessory if, "acting with the mental state required for the commission of an offense, [he] solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense . . . ." The defendant argues that, as a matter of law, one cannot be convicted of being an accessory to an accessory. We are not persuaded by the defendant's argument. Rather, we believe that the

defendant has misconstrued the basic tenets of accessorial liability as set forth in § 53a-8.

"When a claim on appeal challenges the sufficiency of the evidence we first review the evidence in the light most favorable to sustaining the jury's verdict; next we determine, whether, upon the facts established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Holder*, 18 Conn. App. 184, 194, 557 A.2d 553 (1989).

We conclude that there was sufficient evidence from which the jury could have reasonably found the defendant guilty of larceny in the first degree as an accessory and burglary in the third degree as an accessory. The defendant argues that because he never actually communicated with the principals of the crime, Foley and Piazza, but only with Stevens, he cannot be an accessory to Foley and Piazza's crimes. This argument is wholly without merit. The purpose of accessorial liability is to impose alternative liability on those who solicit or aid others in the commission of crimes. See *State* v. *Hopkins*, 25 Conn. App. 565, 568–69, 595 A.2d 911, cert. denied, 220 Conn. 921, 597 A.2d 341 (1991). Using the defendant's reasoning, a person could easily escape liability by having an intermediary communicate with the principals of a crime. Were we to accept this line of reasoning, it would thwart the purpose of imposing accessorial liability.

In order to prove accessorial liability, the state must prove beyond a reasonable doubt that the defendant had both the intent to help the principal and the intent to commit the crime. *State* v. *Vincent*, 194 Conn. 198, 207, 479 A.2d 237 (1984). The evidence presented at trial showed that the defendant helped the principals

by providing them with a map to Whalen's house. The fact that the defendant did not give the map directly to either Foley or Piazza but to Stevens does not eliminate the defendant's liability as an accessory. By giving the map to Stevens, the defendant not only aided the principals but also demonstrated his intent to facilitate the commission of the crime. We conclude that there was sufficient evidence to sustain a verdict of guilty.

The judgment is affirmed.

In this opinion the other judges concurred.