## STATE OF CONNECTICUT *v.* LAWAUN JENKINS
### (13340)

Lavery, Schaller and Freedman, Js.

Argued November 11, 1995—decision released March 19, 1996

*David M. Wallman*, for the appellant (defendant).

*Ronald G. Weller*, deputy assistant state's attorney, with whom, on the brief, were *Donald A. Browne*,

state's attorney, and *Margaret K. Luchansky*, assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction,[1] rendered after a jury trial, of assault of a peace officer in violation of General Statutes § 53a-167c[2] and interfering with an officer in violation of General Statutes § 53a-167a.[3] The defendant claims that the trial court improperly (1) failed to instruct the jury on the elements of intent and causation as to the charge of assault of a peace officer, (2) failed to instruct the jury on the element of intent as to the charge of interference with an officer, and (3) violated his right not to be placed in double jeopardy. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 14, 1992, at approximately 7 p.m., Officers Paul Nikola and Diane Pato were on patrol in Bridgeport. Ismaer Rivera and Eva Rivera approached the officers and reported that moments before they had stopped for a red light at the intersection of Noble and Barnum Avenues when an individual approached their car. The Riveras stated that the individual had tried to get in their car, to attack them and rob them, but that they had driven away when the light turned green, leaving the individual behind.

After the Riveras reported the incident, the officers and the Riveras returned to the intersection where they

---

[1] The defendant was acquitted of criminal attempt to commit robbery in the second degree, the lesser included offense of criminal attempt to commit robbery in the third degree and criminal attempt to commit larceny in the second degree. These charges are unrelated to this appeal.

[2] General Statutes § 53a-167c provides in pertinent part: "(a) A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonably identified peace officer . . . from performing his duty, and while such peace officer is . . . acting in the performance of his duties, (1) he causes physical injury to such peace officer . . . ."

[3] General Statutes § 53a-167a (a) provides: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties."

had encountered the defendant, whom the Riveras identified as the individual who had tried to get in their car. Officer David Riehl also arrived as backup. The officers, all wearing police uniforms, informed the defendant that he fit the description of an individual involved in an attempted robbery and that he would have to come with them to the police station.

The defendant pushed two officers away and attempted to flee. All three officers pursued the defendant until Riehl tackled the defendant. The defendant struggled with the three officers and attempted to grab Riehl's gun. During the struggle, Riehl sustained a painful cut on his elbow. At some point during the struggle, Nikola informed the defendant that he was under arrest. While being taken to a police vehicle, the defendant, by wrapping his legs around a signpost, further hindered Nikola. Nikola and Riehl forcibly removed the defendant from the post and placed him in the police vehicle. Once inside the vehicle, the defendant repeatedly struck his head against a window.

I

The defendant claims the trial court improperly failed to instruct the jury on the elements of intent and causation as to the charge of assault of a peace officer. The defendant argues that, by failing to instruct the jury on essential elements of the crime, the trial court misled the jury and deprived him of his due process right. We find no merit in the defendant's claims.

A

The defendant did not preserve his claim in the trial court that that court improperly failed to instruct the jury on the element of intent and, therefore, seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). A defendant can prevail on a claim of constitutional error not preserved at trial only by satisfying

the four conditions of *Golding*.[4] Id., 239. " '[W]e are free, however, to dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case.' " *State* v. *Krzywicki*, 39 Conn. App. 832, 836, 668 A.2d 387 (1995), quoting *State* v. *Andrews*, 29 Conn. App. 533, 537, 616 A.2d 1148 (1992), cert. denied, 224 Conn. 924, 618 A.2d 531 (1993).

A "failure to instruct the jury adequately with regard to an essential element of the crime of assault of a peace officer may result in a due process violation implicating the fairness of the trial. *State* v. *Hinton*, 227 Conn. 301, 313–14, 630 A.2d 593 (1993). The issue is one of constitutional magnitude implicating a fundamental right." *State* v. *Dunbar*, 37 Conn. App. 338, 342, 656 A.2d 672, cert. denied, 233 Conn. 906, 657 A.2d 644 (1995). The defendant has failed to show, however, that a constitutional violation exists and that he was clearly deprived of a fair trial.

The defendant argues that the trial court misled the jury when it failed to define intent specifically as to the charge of assault of a peace officer.[5] We note, however,

---

[4] The four conditions of *Golding* are the following: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." *State* v. *Golding*, supra, 213 Conn. 239–40.

[5] The trial court instructed the jury as follows: "The next count is the charge of assault on a police officer. The crime of assault on a peace officer is defined in Connecticut General Statutes § 53a-167c. It reads as follows: 'the person is guilty of assault on a peace officer when with *intent* to prevent a reasonably identified peace officer from performing his duties, such person causes physical injuries to such peace officer.' For your purposes a police officer is a peace officer.

"The definition of physical injury, according to our Connecticut General Statutes is as follows: 'Physical injury means any impairment or physical condition or pain.' You'll have to recall the testimony presented by the officer that he was injured; that would be Officer Riehl and the testimony

that the trial court first instructed the jury on the charges of attempt to commit robbery in the second degree and attempt to commit larceny in the second degree and, in so doing, specifically defined intent.[6] The trial court also stated: "I remind you that the burden of proving intent beyond a reasonable doubt is on the state."

"Under the third prong of *Golding*, a defendant may prevail on an unpreserved constitutional claim of instructional error only if from the substance of the charge rather than its form, it is reasonably possible that the jury was misled. *State* v. *Walton*, 227 Conn. 32, 65, 630 A.2d 990 (1993). To be adequate, the charge must have provided the jurors with a clear understanding of the elements of the crime of assault of a police officer, and have afforded proper guidance for the determina-

of the other officers concerning the incident. If you come to the conclusion that the state has proven the defendant guilty of this charge beyond a reasonable doubt you will find him guilty. If they have failed to prove it, then you will find him not guilty." (Emphasis added.)

[6] The trial court specifically instructed the jury as follows: "Intentional conduct is purposeful conduct, rather than conduct that is accidental or inadvertent. Now, intent is a mental process. A person may take the stand and testify as to what his or her intention was. And you may believe that testimony or not, according to whether or not you find it warrants belief . . . but, intention offered can only be proven by the actions and statements of the person whose act is being examined. No one can be expected to come into court and testify that he looked into another person's mind and saw there a certain intention. It is often impossible and never necessary to prove criminal intent by direct evidence. Intent may be proven by circumstantial evidence as I have explained that term to you; therefore, one way in which the jury can determine what a person's intention was at any given time, aside from that person's own testimony, is first by determining what the person's conduct was, including any statements he made and what the circumstances were surrounding that conduct. And then from that conduct and those circumstances inferring what his intention was. In other words a person's intention may be inferred from his conduct. You may . . . infer from the facts that [if] the accused engaged in conduct that he intended to engage in that conduct. Now, this inference is not a necessary one. That is, you are not required to infer intent from the accused['s] conduct, but it is an inference you may draw if you find that it is a reasonable and logical inference."

tion of whether those elements were proved beyond a reasonable doubt." *State* v. *Dunbar*, supra, 37 Conn. App. 343. The instruction to the jury must be considered as a whole in determining whether there is a reasonable possibility that the jury was misled. *State* v. *Lemoine*, 233 Conn. 502, 509, 659 A.2d 1194 (1995).

Having reviewed the charge as a whole, and noting the similarities between this case and *State* v. *Dunbar*, supra, 37 Conn. App. 338, we conclude that it is not reasonably possible that the jury was misled. See also *State* v. *March*, 39 Conn. App. 267, 664 A.2d 1157, cert. denied, 235 Conn. 930, 667 A.2d 801 (1995); *State* v. *Jackson*, 34 Conn. App. 599, 642 A.2d 738, cert. granted, 231 Conn. 917, 648 A.2d 165 (1994) (appeal withdrawn October 18, 1994). Although the trial court did not specifically define intent when instructing the jury on the charge of assault of a peace officer, the trial court conveyed to the jury that it must find intent beyond a reasonable doubt in order to convict the defendant. Moreover, the trial court used the word in its ordinary meaning. " '[W]hen a word contained in an essential element carries its ordinary meaning, failure to give the statutory definition will not constitute error.' " *State* v. *Dunbar*, supra, 344, quoting *State* v. *Sinclair*, 197 Conn. 574, 581, 500 A.2d 539 (1985). The defendant's claim, therefore, fails under the third prong of *Golding*.

B

The defendant adequately preserved his claim at trial that the trial court improperly failed to instruct the jury on the element of causation. The trial court instructed the jury that § 53a-167c requires the state to prove causation, but did not provide the jury with an expanded definition of causation.[7] The defendant argues that, because of the many definitions of causation, the

[7] See footnote 5.

instruction misled the jury and deprived him of a fair trial.

Riehl testified at trial that when he, Nikola and Pato approached the defendant, the defendant ran away. When Riehl tackled the defendant from behind, the defendant attempted to grab Riehl's gun and struggled to resist arrest. Riehl further testified that Nikola and Pato were also involved in the struggle, that he "was on the bottom of the whole pile," and that he received a painful cut on his elbow. The trial court instructed the jury to recall Riehl's testimony as well as the testimony of the other officers to determine whether the state had proven the defendant guilty beyond a reasonable doubt.[8]

As long as the jury charge provides the jury with a clear understanding of the elements of the crime and guidance for proper determination of whether those elements were present, the charge is constitutionally adequate. See *State* v. *Lemoine,* supra, 233 Conn. 509; *State* v. *Sinclair,* supra, 197 Conn. 581. Our Supreme Court has discussed the requirements of proper jury instructions on causation in criminal prosecutions in several decisions. See, e.g., *State* v. *Munoz,* 233 Conn. 106, 659 A.2d 683 (1995); *State* v. *Leroy,* 232 Conn. 1, 653 A.2d 161 (1995); *State* v. *Spates,* 176 Conn. 227, 405 A.2d 656 (1978), cert. denied, 440 U.S. 922, 99 S. Ct. 1248, 59 L. Ed. 2d 475 (1979). Most significantly, the Supreme Court recently stated in *State* v. *Munoz,* supra, 121–22 n.8: "We emphasize that, as *State* v. *Leroy,* supra, [13], suggests, the requirement of language in the jury instructions regarding an efficient, intervening cause is not ironclad. It arises in those cases in which the evidence could support a finding by the jury that the defendant's conduct was overcome by an efficient, intervening cause, or in which the evidence regarding

---

[8] See footnote 5.

proximate causation was such that, based on the doctrine of efficient, intervening cause, the jury could have a reasonable doubt about the defendant's guilt. Thus, in the general run of cases, in which the evidence is susceptible of a finding of only one cause of the harm contemplated by the statute, a statement in the jury instruction referring to an efficient, intervening cause might well be unnecessary."

We conclude that because this case does not contain a complex issue of causation, the trial court did not improperly deny the defendant's request for an expanded definition of causation. The facts support the conclusion that, if the defendant had not resisted arrest and struggled, Riehl would not have been injured. "[W]hen a word contained in an essential element carries its ordinary meaning, failure to give the statutory definition will not constitute error." (Internal quotation marks omitted.) *State* v. *Dunbar*, supra, 37 Conn. App. 344. Because a complex issue of causation was not present in this case, the use of the plain meaning of causation did not present a reasonable possibility that the jury was misled nor the defendant deprived of due process.

## II

The defendant claims that the trial court improperly failed to instruct the jury that intent is an essential element of interfering with an officer. The defendant did not preserve this claim at trial but seeks review under *Golding*. We find no merit in the defendant's claim.

The trial court instructed the jury that "[t]he purpose of the statute . . . . is to enforce orderly behavior in the important mission of preserving the peace and any act *intended* to thwart the purposes violated . . . the statute." (Emphasis added.) The court's instruction also

included the following: "The purpose of General Statutes § 53a-23[9] is to require nonviolent compliance with a police officer's decision, right or wrong, to arrest, thus avoiding the dangers of violence to the police and to the arrested person." Finally, the court stated: "If you come to a conclusion that the state has proven beyond a reasonable doubt the elements of this count then you'll find the defendant guilty. If not, you will find him not guilty of the charge."

Although it does not appear in the statutory language of General Statutes § 53a-167a,[10] intent is an element of the crime of interfering with an officer. *State* v. *Nita*, 27 Conn. App. 103, 111, 604 A.2d 1322, cert. denied, 222 Conn. 903, 606 A.2d 1329, cert. denied, 506 U.S. 844, 113 S. Ct. 133, 121 L. Ed. 2d 86 (1992); *In re Adalberto S.*, 27 Conn. App. 49, 55, 604 A.2d 822, cert. denied, 222 Conn. 903, 606 A.2d 1328 (1992). The defendant is constitutionally entitled to have the jury instructed on the essential elements of a crime charged. *State* v. *Williamson*, 206 Conn. 685, 708, 539 A.2d 561 (1988). The state must prove beyond a reasonable doubt that, considering the charge as a whole, there is no reasonable possibility that the jury was misled. *State* v. *Sinclair*, supra, 197 Conn. 582; *State* v. *Nita*, supra, 112.

On two occasions, we have rejected the identical claim that the trial court must state specifically that intent is one of the three elements of interfering with an officer. *State* v. *Nita*, 27 Conn App. 112; *State* v. *Wilson*, 17 Conn. App. 97, 108, 550 A.2d 21 (1988). "While it would be preferable to list intent as one of the three elements of the offense of interference with a police officer"; *State* v. *Wilson*, supra, 108; it is not constitutionally required. The trial court instructed the jury

---

[9] General Statutes § 53a-23 provides: "A person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer, whether such arrest is legal or illegal."

[10] See footnote 3.

that the purpose of the statute was to "enforce orderly behavior in the important mission of preserving the peace and any act intended to thwart the purposes violated . . . the statute." The trial court, therefore, linked intent with criminal purpose. See *State* v. *Sinclair*, supra, 197 Conn. 581; *State* v. *Jackson*, supra, 34 Conn. App. 608.[11] We conclude that the charge, read as a whole, did not mislead the jury.

## III

The defendant claims finally that his conviction of interfering with an officer and assault of a peace officer violated his right under the United States and Connecticut constitutions not to be placed in double jeopardy.[12] The defendant did not preserve this claim at trial but seeks review under *Golding*. We find no merit in the defendant's claim.

The double jeopardy clause of the fifth amendment to the United States constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." The double jeopardy clause, therefore, protects a defendant from multiple punishments for the same offense. *State* v. *Ives*, 37 Conn. App. 40, 49, 654 A.2d 789, cert. denied, 234 Conn. 906, 659 A.2d 1209 (1995), citing *State* v. *Lonergan*, 213 Conn. 74, 78–79, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990); see also *State* v. *Hickman*, 235 Conn. 614, 618, 668 A.2d 1321

[11] Furthermore, the trial court referred to the purposes of General Statutes § 53a-23. This court has previously held that §§ 53a-23 and 53a-167a (a) must be read together. *State* v. *Privitera*, 1 Conn. App. 709, 719, 476 A.2d 605 (1984).

[12] We note that this court has held that our state constitution does not afford any greater due process rights than those afforded under the federal constitution's double jeopardy clause in analyzing double jeopardy claims arising from multiple convictions and punishments imposed in a single trial. *State* v. *Adams*, 38 Conn. App. 643, 662 A.2d 1327, cert. denied, 235 Conn 908, 665 A.2d 902 (1995); *State* v. *Laws*, 37 Conn. App. 276, 295, 655 A.2d 1131, cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995).

(1995). "To be entitled to this type of double jeopardy protection, the defendant must satisfy both prongs of a two prong test. . . . First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) *State* v. *Ives*, supra, 37 Conn. App. 49; see also *State* v. *DePastino*, 228 Conn. 552, 571–72, 638 A.2d 578 (1994). Because there is no dispute in this case that the charges arose out of the same transaction, the sole issue is whether the crimes constitute the same offense. See *State* v. *Nixon*, 32 Conn. App. 224, 236, 630 A.2d 74 (1993), aff'd, 231 Conn. 545, 651 A.2d 1264 (1995); *State* v. *Raymond*, 30 Conn. App. 606, 608–609, 621 A.2d 755 (1993).

In examining the second requirement of the test, we apply the test promulgated in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). *State* v. *Chicano*, 216 Conn. 699, 707, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991); *State* v. *Ives*, supra, 37 Conn. App. 50–51. Under the *Blockburger* test, " '[w]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' " *State* v. *Chicano*, supra, 707, quoting *Blockburger* v. *United States*, supra, 304. " 'In conducting this inquiry we look only to the relevant statutes, the information, and the bill of particulars, not to evidence presented at trial.' " *State* v. *Palmer*, 206 Conn. 40, 52, 536 A.2d 936 (1988).

The defendant argues that his claim is controlled by our decision in *State* v. *Flynn*, 14 Conn. App. 10, 18–19, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct.

226, 102 L. Ed. 2d 217 (1988), in which we concluded: "Applying the standard of whether each provision requires proof of an additional fact which the other does not, we conclude that a person could not commit the greater offense of assault on a peace officer without having committed the lesser offense of interfering with a peace officer." " 'Our analysis does not end here, however. The *Blockburger* test is a rule of statutory construction and its application does not result in a conclusive presumption.' *State* v. *Russell*, 25 Conn. App. 243, 251, 594 A.2d 1000, cert. denied, 220 Conn. 911, 597 A.2d 338 (1991)." *State* v. *Nixon*, supra, 32 Conn. App. 238–39.

In *State* v. *Flynn*, supra, 14 Conn. App. 19, we held that the *Blockburger* test could not be rebutted when the defendant was convicted of assaulting and interfering with one peace officer.[13] Our Supreme Court, however, has held on numerous occasions that: "Where crimes against persons are involved, a separate interest of society has been invaded for each violation. Therefore when two or more persons are the victims of a single episode there are as many offenses as there are victims. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Lytell*, 206 Conn. 657, 666, 539 A.2d 133 (1988); *State* v. *Bunkley*, 202 Conn. 629, 659–60, 522 A.2d 795 (1987); *State* v. *Rawls*, 198 Conn. 111, 121, 502 A.2d 374 (1985); *State* v. *Madera*, 198 Conn. 92, 110, 503 A.2d 136 (1985); *State* v. *Couture*, 194 Conn. 530, 565–66, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

---

[13] Our conclusion that the defendant's convictions were the same offense for double jeopardy purposes, therefore, was premised on the observation that: "It is theoretically impossible to have a situation where one, with intent to prevent the performance of duties of a peace officer, either causes physical injury to an officer or throws or hurls a bottle or other object at an officer capable of causing harm without at the same time obstructing, hindering, resisting or endangering *that officer* in the performance of his duties." (Emphasis added.) *State* v. *Flynn*, supra, 14 Conn. App. 19.

We note that "a peace officer" in § 53a-167c and "an officer" in § 53a-167a are "in the singular and there is no indication that the defendant can get a bargain rate"; (internal quotation marks omitted) *State* v. *Lytell*, supra, 206 Conn. 666–67; when two officers are involved. We conclude that §§ 53a-167c[14] and 53a-167a authorize punishment for separate violations against each officer, regardless of whether the violations were spatially linked.

The judgment is affirmed.

In this opinion the other judges concurred.

[14] We note that in *State* v. *Woolcock*, 201 Conn. 605, 631, 518 A.2d 1377 (1986), our Supreme Court stated that § 53a-167c "is intended to protect peace officers in the performance of their duty."