STATE OF CONNECTICUT *v.* EMMANUEL A. BLANGO
(AC 27434)

Flynn, C. J., and Gruendel and Harper, Js.

Argued April 30—officially released July 17, 2007

*Annacarina Del Mastro,* senior assistant public defender, for the appellant (defendant).

*Ronald G. Weller,* senior assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich,* state's attorney, and *Thomas M. DeLillo,* assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Emmanuel A. Blango, appeals from the judgments of conviction, rendered following a jury trial, of one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), one count of larceny in the fifth degree in violation of General Statutes § 53a-125a and four counts of threatening in the second degree in violation of General Statutes § 53a-62 (a) (1).[1] He was sentenced to a term of five years incarceration, to be served consecutive to a previously imposed sentence. On appeal, the defendant claims (1) that there was insufficient evidence to support (a) his conviction of robbery in the first degree and (b) his conviction of one of the counts of threatening in the second degree, and (2) that the court's jury instructions were misleading as to (a) the robbery in the first degree charge and (b) the threatening charges. We affirm the judgments of the trial court.

The following facts, as reasonably could have been found by the jury, are relevant to the issues on appeal. On April 18, 2003, at approximately 3:30 a.m., three Eastern Connecticut State University students, Rosa Luis, Meghan Bauer and Emily Rood, were walking on campus near the Noble Hall dormitory. As Luis went to

[1] Two of the defendant's cases were consolidated for trial. The court's decision to allow consolidation is not an issue in this appeal.

knock on her friend's dormitory window, the defendant, while driving his white Saab automobile, drove alongside Bauer and Rood and began to question them. Luis was standing approximately twelve feet away from the other students but could hear the defendant, who asked Bauer and Rood if Luis was their friend. Bauer and Rood kept walking, and the defendant, while dangling a gun from his left hand, then asked the students: "Have you ever been shot before?" All three students ran to the front of Noble Hall and into some bushes for safety, and the defendant left the scene. The students, who were crying, terrified, hysterical and scared, reported the incident to the police.

Shortly thereafter, the defendant stopped his automobile for a hitchhiker, Thomas Vincent, and offered to give Vincent a ride in exchange for $10. Vincent agreed but stated that he needed to go to an automatic teller machine (ATM) to obtain money. The defendant drove to a nearby Fleet Bank ATM drive-thru, where Vincent handed the defendant his ATM card, told him the personal identification number (PIN) to gain access to his account and asked the defendant to withdraw $300. The defendant obtained the $300, pulled a gun on Vincent and ordered him out of the automobile without giving him the money. Vincent then requested that the defendant return his ATM card, but the defendant refused. After exiting the automobile, Vincent ran toward some bushes and watched as the defendant reinserted his ATM card to withdraw additional money. Vincent ran onto Main Street, where he reported the robbery to a police officer. As the officer went to investigate, the defendant approached Vincent, who ran until he tripped and fell. The defendant then knelt on top of Vincent, held a gun to Vincent's head and stated, "pow, you're dead," before running toward a nearby Mobil gasoline station and Dandy Donut shop.

Vincent then pointed out the defendant to the police, who had discovered the defendant's Saab at the Fleet Bank ATM drive-thru with the engine still running. The police arrested the defendant and, after searching the area, found the defendant's gun, an ATM receipt for $301 and $751 in cash in a wooded area nearby.

The defendant was charged with three counts of threatening in the second degree related to the incident at Eastern Connecticut State University, and one count each of robbery in the first degree, larceny in the fifth degree and threatening in the second degree for the incident involving Vincent. Both cases were consolidated and tried to the jury, which found the defendant guilty on all counts. This appeal followed.

I

The defendant first claims that there was insufficient evidence to support (a) his conviction of robbery in the first degree and (b) his conviction of one of the counts of threatening, specifically the charge related to Luis. We disagree.

The following additional procedural history is relevant to the defendant's claim. On December 5, 2005, after the jury's verdicts, the defendant filed a motion for a judgment of acquittal on the robbery charge and on the threatening charge related to Luis on the ground that the state had failed to prove each and every element of these charges. On that same date, the defendant also filed a motion to set aside the jury's verdicts and for a new trial. In these motions, the defendant argued, in relevant part, that the evidence adduced at trial failed to prove that he compelled Vincent to "deliver up" money, as had been specifically charged by the state, and that the evidence failed to prove that the defendant had the requisite intent to threaten Luis because there was no evidence that his comments were directed to

her or that he ever attempted to speak directly to her. The court denied these motions.

When reviewing sufficiency of the evidence claims, we first construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether, upon the facts so construed and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the cumulative force of the evidence established guilt as to each element of the crime charged beyond a reasonable doubt. See *State* v. *Lopez*, 280 Conn. 779, 808, 911 A.2d 1099 (2007).

It does not diminish the probative force of the evidence that it consists, in its entirety or in part, of evidence that is circumstantial rather than direct. Id. The jury may draw whatever inferences from the evidence or the facts established by the evidence it deems to be reasonable and logical. Id. On appeal, we ask only whether there is a reasonable view of the evidence that supports the jury's verdicts of guilty. Id., 809.

### A

We first address the defendant's claim that there was insufficient evidence to support his conviction of robbery in the first degree. The defendant argues: "In count one of the information [in the first case], the state charged the defendant with robbery in the first degree, accusing him that 'while in the course of committing a larceny, [the defendant] threaten[ed] the immediate use of physical force against another person, to wit: Thomas A. Vincent, for the purpose of compelling the owner of property, the said Mr. Vincent, *to deliver up* said property, and in the course of commission of said crime, the [defendant] threatened the use of a firearm . . . .' " (Emphasis in original.) The defendant argues that on the basis of this charging document, the state had to prove that he committed robbery by compelling Vincent

to "deliver up" property and that there was "not a scintilla of evidence [that he] compelled Vincent *to deliver up* any property." (Emphasis in original.) Accordingly, he argues, the evidence was insufficient to support his conviction on the charge of robbery in the first degree. We disagree.

General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

General Statutes § 53a-133 defines robbery as follows: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

Larceny is defined in relevant part by General Statutes § 53a-119 as follows: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

The crux of the defendant's claim is that because the state specifically alleged that the defendant was guilty of robbery for forcing Vincent to "deliver up" property at gunpoint, it would be insufficient for the state to prove robbery by any other means except for the alleged forcing of the victim to "deliver up" property. Although

we do not necessarily agree with the defendant's contention, we find it unnecessary to respond to this argument because we conclude that the evidence did prove that the defendant, while threatening the use of a firearm, forced Vincent to "deliver up" property.

As we explained in *State* v. *Torres*, 82 Conn. App. 823, 847 A.2d 1022, cert. denied, 270 Conn. 909, 853 A.2d 525 (2004): "Both subdivisions (1) and (2) of . . . § 53a-133 refer to the defendant's purpose in using or threatening force. Subdivision (1) refers to his purpose of using or threatening force to prevent or overcome resistance to the taking of the property, or to its retention immediately after the taking. Subdivision (2) refers to his purpose of using or threatening force to compel the owner to deliver up property or otherwise to aid in the larceny. These two states of mind are hardly conceptually distinct from each other . . . . Both states of mind [involve] an intent to force or intimidate the [victim] to yield [his] property so as to permit its taking or retention by the defendant." (Internal quotation marks omitted.) Id., 834.

We decline the defendant's invitation to construe the term "deliver up" so narrowly; rather, we construe the term more broadly, as its common definition would suggest, to mean a relinquishment of control or possession. The term "delivery" is commonly defined as "[t]he formal act of transferring or conveying something, such as a deed; the giving or yielding possession or control of something to another." Black's Law Dictionary (7th Ed. 1999). Similarly, Webster's Third New International Dictionary (2002) defines "deliver" in relevant part as: "give, transfer: yield possession or control of . . . ."

In this case, the evidence demonstrated that although Vincent willingly handed over his ATM card to the defendant for the limited purpose of making a $300

withdrawal, Vincent did not willingly relinquish possession and control of that money to the defendant, nor did he willingly relinquish possession and control of his ATM card. The evidence showed that Vincent gave the defendant temporary custody of his ATM card for the limited purpose of making a monetary withdrawal, with the full expectation that both the money and the ATM card immediately would be returned to him. When the defendant refused to give Vincent the money, put a gun to Vincent's head, demanded that Vincent exit the vehicle and, then, refused to return Vincent's ATM card, the defendant committed a robbery in the manner specifically charged by the state.

In a related argument, the defendant also contends that the court should have "marshaled" the evidence by instructing the jury that it could not consider the second ATM withdrawal as the predicate larceny to the robbery charge because it was not contemporaneous with his use of force. This argument merits little discussion.

"It is well established that, under General Statutes § 53a-133, if the use of force occurs during the continuous sequence of events surrounding the taking or attempted taking, *even though some time immediately before or after*, it is considered to be in the course of the robbery or the attempted robbery within the meaning of the statute." (Emphasis added; internal quotation marks omitted.) *State* v. *Ghere*, 201 Conn. 289, 297, 513 A.2d 1226 (1986).

The evidence in this case demonstrated that the defendant, after refusing to return Vincent's $300, held a gun to Vincent's head and ordered him out of the automobile. Vincent then asked for the return of his ATM card, and the defendant refused. During his direct testimony, the defendant, although contesting these facts, testified that after Vincent left the vehicle, he

watched Vincent until he was out of sight and that he then immediately returned to the ATM and made a subsequent withdrawal. Specifically, the defendant testified: "[Vincent] got out of the car. And I watched him until I couldn't see him [any] more. Then I got out of the car, and I went back to the ATM. I made another withdrawal. . . . [Vincent] left his ATM card and everything . . . on the top of the glove [compartment] area. So, that's when I [saw it] and went back and made another withdrawal." On the basis of these facts, we conclude that the second use of the ATM card occurred during a continuous sequence of events. See also *State v. Moore*, 100 Conn. App. 122, 128–32, 917 A.2d 564 (2007) (after committing larceny, defendant's statement to store employee that she would " 'blow his brains out' " just seconds after leaving store sufficiently contemporaneous with larceny to support robbery conviction).

Nevertheless, even without consideration of the defendant's second use of Vincent's ATM card, as we explained previously in this section, the jury had sufficient evidence with which to find the defendant guilty on the charge of robbery in the first degree.

B

We next address the defendant's claim that there was insufficient evidence to support his conviction of one of the counts of threatening in the second degree, specifically, the charge related to Luis. The defendant argues that "Luis was not a part of the conversation between Bauer, Rood and the defendant" and that, therefore, "[t]he conviction of threatening for . . . Luis must be reversed because the state failed to prove [that] the defendant had the necessary intent to place this complainant in fear of imminent serious physical injury." The state argues that this claim merits little discussion because the evidence clearly showed that

the defendant asked all three students whether they had "ever been shot before," which caused all three of them to run off in fear. We agree with the state.

General Statutes § 53a-62 (a) provides in relevant part: "A person is guilty of threatening in the second degree when: (1) By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ."

In this case, the evidence demonstrated that the defendant, while in his vehicle, approached two female students and began to question them while another student, Luis, was standing approximately twelve feet away. One of the questions that the defendant asked the students was whether Luis was their friend. Luis could hear the defendant's questions. As the two students began to walk away, the defendant asked: "[H]ave you girls ever been shot before?" All three students looked toward the defendant, saw him holding a gun and ran in fear to some bushes at the front of the building.

Construing the evidence, and the reasonable inferences drawn therefrom, in a light most favorable to upholding the jury's verdict, we conclude that the jury reasonably could have concluded that the defendant was addressing all three students when he asked whether they had ever been shot. Accordingly, there is a reasonable view of the evidence that supports the jury's verdict on the charge of threatening in the second degree as it relates to Luis.

II

The defendant next claims that the court's jury instructions were misleading on (a) the charge of robbery in the first degree and (b) the charges of threatening in the second degree. He argues that the court failed to instruct the jury on each element of these crimes in

violation of the defendant's right to a fair trial. Because the defendant did not preserve these claims of instructional impropriety properly in the trial court, he seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2] We conclude that his claim is reviewable under *Golding* because the record is adequate for review and the claim of instructional impropriety is of constitutional magnitude. See *State* v. *Denby*, 235 Conn. 477, 483, 668 A.2d 682 (1995). We conclude, however, that the defendant cannot prevail on his claim of instructional impropriety.

The standard of review for claims of instructional impropriety is well established. "The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [it] might find to be established . . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party . . . . In this inquiry we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial. . . . Moreover, as to unpreserved claims of constitutional error in jury

---

[2] "Under *State* v. *Golding*, supra, 213 Conn. 239–40, a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 178 n.22, 920 A.2d 236 (2007).

instructions, we have stated that under the third prong of *Golding*, [a] defendant may prevail . . . only if . . . it is reasonably possible that the jury was misled . . . ." (Internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 179, 920 A.2d 236 (2007).

A

The defendant claims that the court improperly instructed the jury on the charge of robbery in the first degree by failing to instruct on all elements of the crime. Citing D. Borden & L. Orland, 5A Connecticut Practice Series: Criminal Jury Instructions (3d Ed. 2001) § 13.6, the defendant argues that the court did not explain to the jury that "it could only find the defendant guilty if the state proved [that] the defendant had the *conscious objective* for all the elements of the robbery, (including the element of larceny). The court's instructions also did not explain that to find the defendant guilty, it had to find 'that in the course of committing the larceny [the defendant] *intentionally* used physical force [or threat of physical force] on another person for the purposes of compelling the owner of such property or another person to delivery up the property . . . .' " (Emphasis in original.) Therefore, the defendant argues, the court improperly omitted instructions on essential elements of the crime of robbery in the first degree. The state argues in part that the law does not require that the "court charge that a defendant must 'intentionally' use physical force to sustain a robbery conviction." Additionally, the state argues that the court's instructions were proper. Reviewing the charge as a whole, we conclude that the defendant cannot prevail on his claim.

The court began its instructions to the jury by telling it that it must follow all of the court's instructions and not only some of them. The court told the jury that the case must be decided on the basis of the evidence, and it explained what was and was not evidence and

discussed both circumstantial and direct evidence. The court then discussed credibility, expert witnesses and impeachment. Following these instructions, the court explained the state's burden of proof and the concept of reasonable doubt. The court then went on to discuss the crimes charged and the elements of these offenses.

The first of the charged offenses explained by the court was the charge of robbery in the first degree. The court explained in relevant part: "A person commits robbery when in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny . . . . The gist of the crime of robbery is the act of committing a larceny by force or the threat of force. Robbery in the first degree, which is what the defendant is charged with here, provides that a person is guilty of robbery in the first degree when in the course of the commission of the crime of robbery as defined in [§ 53a-133] . . . or in immediate flight therefrom, that person displays or threatens the use of what he represents by his words or conduct to be a . . . firearm." The court explained the requirements of a firearm under the statute and also explained the defendant's special defense, which alleged that the weapon that he had possessed did not meet the necessary requirements to qualify as a firearm because it was not a weapon from which a shot could be discharged.[3] The court also instructed the jury on the lesser included offense of robbery in the second degree.

[3] General Statutes § 53a-134 (a) provides: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged . . . ."

Immediately following the instructions on robbery, the court instructed the jury on the crime of larceny. The court instructed in relevant part: "A person commits larceny when, with the intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from the owner. Each of the following elements must be proven by the state beyond a reasonable doubt: first, that the defendant wrongfully took or obtained or withheld property from an owner; and, secondly, that at the time the defendant obtain[ed] this property, he intended to deprive the owner of [his] property or to appropriate such property to himself or another person. Larceny means theft or stealing."

The court then instructed the jury on the element of a wrongful taking before proceeding to instruct on the element of intent. In instructing on intent, the court explained: "The second element that you must consider in determining whether the defendant is guilty of larceny is that of intent. The state must prove beyond a reasonable doubt that . . . at the time the defendant wrongfully took, obtained or withheld property from its owner, he intended to deprive the owner . . . of it and that he intended to appropriate it to himself . . . .

"Intent relates to the condition of mind of the person who commits the act, that is, his purpose in doing it. As defined by our statute, a person . . . acts intentionally with respect to a result or conduct when his conscious objective is to cause such result or to engage in such conduct. Either intent to deprive or intent to appropriate must be found to support a conviction of larceny."

As to the defendant's argument that the court should have instructed the jury that "it could only find the defendant guilty if the state proved [that] the defendant had the *conscious objective* for all the elements of the

robbery"; (emphasis in original); we rely on *State* v. *Kurvin*, 186 Conn. 555, 442 A.2d 1327 (1982). In that case, our Supreme Court explained: "The [trial] court charged the jury as follows: 'A person commits robbery when in the course of committing a larceny he uses or threatens the immediate use of physical force upon another person for the *purpose* to compel the owners of the property or another person to deliver up the property.' . . . It immediately repeated this instruction. A little later it charged as follows: 'So in this particular case, without getting into the concept of larceny, which I'll get into . . . in a few moments, if you find beyond a reasonable doubt that the defendant for *purposes* of committing a larceny used a pistol to show or threaten the use of force, for purposes of compelling a person to deliver over property, then you would find that the defendant is guilty of robbery in the first degree. . . . General Statutes § 53a-3 (11) provides: 'A person acts *"intentionally"* with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct.' Since the word 'purpose' is synonymous with 'object' and 'intent'; Webster's, Third New International Dictionary; the court effectively instructed the jury on the robbery charge that the *conscious objective* of the use or threatened use of force was compelling the owner of property to deliver it up to the perpetrator." (Emphasis added.) *State* v. *Kurvin*, supra, 566–67. We conclude that the defendant's argument, therefore, has been considered and rejected previously by our Supreme Court, and we do not address it further. See also *State* v. *Martin*, 77 Conn. App. 778, 804, 825 A.2d 835, cert. denied, 266 Conn. 906, 832 A.2d 73 (2003).

We next consider the defendant's argument that the court's instructions were improper because they did not convey to the jury that it had to find that the defendant

*intentionally* used or threatened physical force for the purpose of compelling the victim to deliver up the property before the jury could find the defendant guilty of robbery in the first degree.

The argument in the present case is the same as that made in *State* v. *Leggett*, 94 Conn. App. 392, 410, 892 A.2d 1000, cert. denied, 278 Conn. 911, 899 A.2d 39 (2006). In *Leggett*, the defendant argued that "the court [improperly had] instructed the jury on the element of intent for robbery because the instructions did not state separately that the defendant needed the intent to use or threaten the use of physical force." Id. On the basis of this claim in *Leggett*, we thoroughly reviewed the jury instructions, which revealed that the court had instructed the jury on the definition of larceny and the intent necessary to commit larceny. Id. The court also had instructed the jury that it had to determine whether the crime of larceny had been accomplished by physical force, and the court described the nature of the physical force necessary for the crime of robbery. Id. We concluded that those instructions sufficiently had set forth the elements of robbery and larceny, and we explained that "the intent element of robbery relates to the commission of the larceny and not to the use or threatened use of physical force." Id. Accordingly, in the present case, the defendant's claim fails to satisfy the third prong of *Golding* because it is not reasonably possible that the court's instruction misled the jury.

B

The defendant next claims that the court's jury instructions were misleading as to the threatening charges because the court failed to instruct the jury on the element of specific intent. The state argues that the court's instructions properly conveyed to the jury the necessary element of intent. We agree with the state.

Immediately after instructing the jury on larceny and intent, the court began its instruction on threatening: "The crime of threatening is defined in § 53a-62 (a) (1) . . . . A person is guilty of threatening when by physical threat he intentionally places or attempts to place another person in fear of imminent serious physical injury. For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: first, that the defendant physically threatened another person and, secondly, that the defendant intended by his conduct to put that person in fear of imminent serious physical injury." The court went on the define the terms "threat" and "physical threat," and it explained to the jury that "[i]n addition to proving that the defendant physically threatened the victim, the state must also prove that the defendant by his conduct intended to place the victim in fear of imminent and serious physical injury."

As explained by our Supreme Court in *State* v. *Sinclair*, 197 Conn. 574, 500 A.2d 539 (1985): "Jury instructions are calculated to give the jurors a clear understanding of the elements of the crime charged, and to afford them proper guidance for their determination of whether those elements were present. . . . As long as the charge as given achieves these goals, it is constitutionally adequate." (Citation omitted.) Id., 581. In *Sinclair*, the trial court had not defined "intent," but our Supreme Court concluded that this was not reversible error because "[t]he word intent was used in its ordinary sense, in a manner which clearly conveyed what had to be proved by the state to justify a conviction." Id.

In *State* v. *Jenkins*, 40 Conn. App. 601, 606, 672 A.2d 969, cert. denied, 237 Conn. 918, 676 A.2d 1374 (1996), we held that where the trial court had conveyed to the jury that it must find intent beyond a reasonable doubt in order to find the defendant guilty, it was not improper

for the court not to define intent when instructing on the charge of assault of a peace officer. In *Jenkins*, we carefully pointed out that the trial court first instructed the jury on the charges of attempt to commit robbery and attempt to commit larceny and, in so doing, specifically had defined intent. Id., 605. The court, in charging the jury on assault of a peace officer, told the jury that "the burden of proving intent beyond a reasonable doubt is on the state." (Internal quotation marks omitted. Id. Concluding that this charge sufficiently instructed the jury on the essential elements of the charge of assault of a peace officer when reviewed in light of the entire charge, we further explained: "[W]hen a word contained in an essential element carries its ordinary meaning, failure to give the statutory definition will not constitute error." (Internal quotation marks omitted.) Id., 606.

In this case, although the defendant argues that the court acted improperly by not including another definition and explanation of "intent" in relation to the threatening charge, reviewing the charge as a whole, we conclude that the court's charge was not improper and that it is not reasonably possible that it misled the jury.

Immediately after charging the jury on the element of intent as it related to the charge of larceny in the fifth degree, the court read for the jury the definition of threatening in the second degree as defined in § 53a-62 (a) (1). The court carefully instructed the jury that a conviction on this charge required the jury to be convinced beyond a reasonable doubt that the defendant had threatened another person and that he had *intended* by his conduct to put that person in fear. The court thus linked the element of intent with a criminal purpose. Although the court did not reiterate the definition of intent during its charge on threatening, it did explain the intent requirement for a conviction. We conclude that it is not reasonably possible that the jury

was misled by the court's instructions. Accordingly, the defendant's claim fails to satisfy *Golding*'s third prong.

The judgments are affirmed.

In this opinion the other judges concurred.