STATE OF CONNECTICUT *v.* CLAUDE L. PERRY, JR.
(AC 27289)

Gruendel, Robinson and Foti, Js.

Argued March 27—officially released July 1, 2008

*Lauren Weisfeld,* senior assistant public defender, for the appellant (defendant).

*Toni M. Smith-Rosario,* senior assistant state's attorney, with whom, on the brief, were *Kevin D. Lawlor,* state's attorney, and *Kevin S. Russo,* supervisory assistant state's attorney, for the appellee (state).

ROBINSON, J. The defendant, Claude L. Perry, Jr.,[1] appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), and attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1). On appeal, the defendant claims that the trial court improperly (1) referred to the complainant as "the victim" in its jury charge and (2) instructed the jury on reasonable doubt. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found that the defendant stabbed the victim, Annie Boddie, in the face, neck and chest, causing her right lung to collapse partially. On April 6, 2005, the defendant was charged by substitute long form information with (1) assault in the first degree with a dangerous instrument in violation of General Statutes § 53a-59 (a) (1), (2) robbery in the first degree in violation of General Statutes § 53a-134 (a) (1), (3) robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), (4) kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), (5) attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1), and (6) attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134 (a) (1). Following a jury trial, the defendant was convicted of assault in the first degree and attempt to commit assault in the first degree. He was sentenced to twenty-three years incarceration, ten of which are mandatory, followed by ten years of special parole with special conditions. This appeal followed. Additional facts and procedural history will be set forth as necessary.

[1] The defendant was also referred to as Claude L. Perry II and Claude Perry in the proceedings at trial and on appeal. We rely on the long form substitute information in which the defendant was referred to as Claude L. Perry, Jr.

The defendant claims on appeal that the court improperly instructed the jury in referring to Boddie as "the victim" and in defining reasonable doubt, thereby depriving him of his constitutional rights to due process of law. He did not preserve these issues for appeal and therefore seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2]

We conclude that the defendant's claims are reviewable under *Golding* because the record is adequate for review and the claims are of constitutional magnitude. "[A]s to unpreserved claims of constitutional error in jury instructions, we have stated that under the third prong of *Golding*, [a] defendant may prevail . . . only if . . . it is reasonably possible that the jury was misled . . . ." (Internal quotation marks omitted.) *State* v. *Aviles*, 107 Conn. App. 209, 230, 944 A.2d 994, cert. denied, 287 Conn. 922, 951 A.2d 570 (2008). We also conclude that his claims fail to satisfy *Golding*'s third prong.[3]

---

[2] Under *Golding*, a "defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[3] The defendant also seeks plain error review of his claims. "The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Smith*, 275 Conn. 205, 240, 881 A.2d 160 (2005); see also Practice Book § 60-5. We conclude that plain error review is not warranted under the circumstances presented. See *State* v. *Arroyo*, 284 Conn. 597, 615–16 n.13, 935 A.2d 975 (2007).

We now set forth the relevant legal principles that govern our resolution of the defendant's claims. The standard of review for claims of instructional impropriety is well established. "The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [it] might find to be established . . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party . . . . In this inquiry we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Blango*, 102 Conn. App. 532, 543, 925 A.2d 1186, cert. denied, 284 Conn. 913, 931 A.2d 932 (2007).

I

The defendant first claims that the court's reference to Boddie as "the victim" in its final jury instructions violated his due process rights. He argues that the court used the term "the victim" to refer to Boddie at least eighteen times, thereby depriving him of his rights to be presumed innocent and to be tried fairly. We disagree.

The court gave the following instructions on the counts of robbery in the first degree: "Physical force is a common, readily understandable expression, which has its ordinary meaning in the everyday . . . use of language. It means the application of external physical power to the person. It can be effected by the hand or other part of the actor's body applied to the *victim's* body. It can be effected by the use of a weapon. In other words, the expression is general and unlimited in regard to the means by which it can be applied or

inflicted. Physical force against a person may take many forms, but must be for the purpose of committing a larceny." (Emphasis added; internal quotation marks omitted.)

The court gave the following instructions on the count of kidnapping in the first degree, in which it used the word "victim" eighteen times: "The defendant is charged in the fourth count with the crime of kidnapping in the first degree in violation of § 53a-92 (a) (2) (A) of our Penal Code, insofar as it is relevant here, which provides as follows: A person is guilty of kidnapping in the first degree when he abducts another person and he restrains the person abducted with intent to inflict physical injury upon her.

"For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: (1) that the defendant abducted *Annie Boddie*; (2) that the defendant unlawfully restrained the person he abducted; and (3) that he did so with the intent to inflict physical injury upon her.

"I shall now define for you the various terms used in this statute. The term abduct means to restrain a person with intent to prevent her liberation by either (A) secreting or holding her in a place where she is not likely to be found or (B) using or threatening to use physical force or intimidation. If the abduction is established by proof of hiding or secreting, there need be no specific proof of the use of force but merely proof that the defendant effectively secreted the *victim* or left that person in a place where she was not likely to be found. Abduction need not be proved by establishing the use of force if the proof establishes that the defendant threatened its use in such manner that the *victim* reasonably believed force would be applied to her if she sought to escape or to thwart the abductor's intention.

"The term restrain means to restrict a person's movements intentionally and unlawfully in such manner as to interfere substantially with her liberty by moving her from one place to another or by confining her either in the place where the restriction commences or in a place to which she has been moved without consent. As used herein, without consent means, but it is not limited to, deception.

"Physical injury means impairment of physical condition or pain.

"As you can see, the abduction and restraining must be intentional. There must be an intent to interfere intentionally with the *victim's* liberty and an intent to prevent the *victim's* liberation, either by secreting or hiding her in a place where she is not likely to be found or by using or threatening to use physical force or intimidation.

"Please recall that a person acts intentionally with respect to a result, defining an offense, when his conscious objective is to cause such result, as well as my other instructions on intent, which are applicable here.

"Thus, either the *victim* must have been moved from one place to another or the *victim* must have been confined in the place where the restriction first began or in the place to which she has been moved without her consent.

"There is no special requirement that the restraint be for any particular length of time or the *victim* may be moved over any—or that the *victim* be moved over any particular distance. Any time period of restraint and any distance of moving of the *victim* is sufficient to constitute these elements of kidnapping. You may, however, consider the length of time and distance together with all other circumstances in determining the question of intention.

"The law, which makes kidnapping criminal, punishes interference with personal liberty in restricting the *victim's* freedom of movement. So, you cannot find kidnapping until you first find it established that there was such restriction of movement and that it has been done intentionally; that is, has been done without right or authority of law and that it has had the effect of interfering substantially with the *victim's* liberty.

"Abduction may be established by satisfactory proof that the *victim* has been unlawfully restrained and that, with the intent to prevent her liberation, the defendant restrained her by using or threatening to use physical force or intimidation.

"Abduction need not be proved by establishing the use [of] force or intimidation if the proof establishes that the defendant threatened its use in such manner that the *victim* reasonably believed that force would be applied to her if she sought to escape or to thwart the abductor's intention.

"The essential nature of kidnapping requires that before you convict, you must find that the restraint and the abduction were done without the consent of the *alleged victim*. Thus, if the *victim* consented, this element of the offense would be negated, and a verdict of not guilty would be required.

"The consent required to negate this element, however, must be actual and real, and not just mere surface acquiescence induced by deception, force, fear or shock. In other words, it must be a truly voluntary and willing act of consent with no compulsion or deception. Consent may be expressed or it may be implied from all the circumstances.

"Whether or not the *victim* consented is a question of fact for you to determine from all the circumstances that have been proven to you. The defendant, however,

does not have to prove consent. The state has the burden to establish lack of consent beyond a reasonable doubt.

"The term physical force has its everyday meaning. It includes any violence or superior physical strength against the *victim*. It is for you to decide whether the evidence proves that physical force was used by the defendant, and whether it actually produced and resulted in the accomplishment of the restraint which is charged.

"But even the use of physical force need not be proved if the evidence in your estimation proves that the restraint was accomplished by intimidation. This requires that the defendant's words or acts placed the *victim* in a state of fear. Such intimidation may be found in a threat or threats to inflict injury made by one with the apparent power to carry out these threats. In any event, to constitute intimidation and thus remove the need to prove actual lack of consent, the proof must convince you that the defendant's words or acts, under the circumstances as they appeared at the time and place in question, enabled the defendant to carry out and effect the restraint or removal by placing the *victim* in terror.

"The next term to be defined is unlawfully. Unlawfully means simply without right, without the right to do so.

"The final element of this crime is that the defendant acted with the intent to inflict physical injury upon *Annie Boddie*, as I have defined physical injury.

"If you find that the state has proven all these elements beyond a reasonable doubt, your verdict would be guilty. If, however, you do not find all these elements proven beyond a reasonable doubt, your verdict would

be not guilty." (Emphasis added; internal quotation marks omitted.)

In the present case, the court began and ended its instructions by referring to Boddie by name and did not refer specifically to her as "the victim." With respect to its definition of physical force, the court used the term "victim" to describe the relationship of a defendant's body to the victim's body. With respect to the instructions for kidnapping, the court used the term "victim" in the context of a definition in which there would be a perpetrator and a victim. Finally, the jury's verdict suggests that the court's use of the term "victim" did not prejudice the defendant. The jury found the defendant not guilty of the robbery and kidnapping counts for which the court used the term "victim" in its final charge. Therefore, we conclude that it was not reasonably possible that the court's use of the term "victim" misled the jury.

II

The defendant next claims that the court improperly instructed the jury on reasonable doubt, thereby violating his constitutional rights to be presumed innocent, to have the state prove his guilt beyond a reasonable doubt, to due process of law and to a fair trial.[4] We disagree.

The defendant challenges the following language: "[Reasonable doubt] is such a doubt as in serious affairs

---

[4] The defendant further claims that the court's instructions violated his rights under article first, §§ 8 and 19, of the constitution of Connecticut. The defendant, however, has failed to provide an analysis of that claim independent of his claim under the analogous provisions of the United States constitution. "[W]e will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . ." (Internal quotation marks omitted.) *State* v. *Fauntleroy*, 101 Conn. App. 144, 159 n.5, 921 A.2d 622 (2007). Accordingly, we confine our analysis to the defendant's federal constitutional claim.

that concern you, you would heed; that is, such a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance. . . . It is, in other words, a real doubt, an honest doubt . . . that has its foundation in the evidence or lack of evidence."

We conclude that the defendant's claim is without merit. Our Supreme Court has held that a trial court properly may use the language challenged by the defendant to explain reasonable doubt. See, e.g., *State* v. *Colon*, 272 Conn. 106, 232–34 & 232 n.83, 864 A.2d 666 (2004) (rejecting constitutional challenge to instruction that reasonable doubt is "a real doubt, an honest doubt," and a kind of doubt "that in the serious affairs that concern you, you would heed" [internal quotation marks omitted]), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); *State* v. *Ferguson*, 260 Conn. 339, 371, 796 A.2d 1118 (2002) ("[w]e consistently have held that the definition of reasonable doubt as a real doubt, an honest doubt, a doubt which has its foundation in the evidence or lack of evidence . . . and as a doubt which in the serious affairs which concern you in every day life you would pay heed and attention to does not dilute the state's burden of proof when such definitions are viewed in the context of an entire charge" [internal quotation marks omitted]); *State* v. *Griffin*, 253 Conn. 195, 207, 749 A.2d 1192 (2000) (noting that United States Supreme Court has upheld explanation that reasonable doubt is doubt "that would cause a reasonably prudent person to 'hesitate' to act in matters of importance").

The judgment is affirmed.

In this opinion the other judges concurred.